[No. 3048.    Decided February 26, 1901.]

JAMES DUNSMUIR, *Respondent*, v. PORT ANGELES GAS, WATER, ELECTRIC LIGHT AND POWER COMPANY *et al.*, *Defendants*, A. P. BURWELL, *Trustee, Appellant*.

APPEAL — BRIEFS — COMPLIANCE WITH COURT RULES.

Failure to comply literally with the requirements of rule 8 of the supreme court, which provides that briefs shall contain a clear statement of the case, as far as deemed material, with references to the pages of the transcript for verification, and shall include the findings of fact made by the court, with the exceptions thereto, on which any question is sought to be raised on appeal, is not ground for striking the brief, when such requirements have been substantially complied with by the appellant.

CHATTEL MORTGAGES — CONSTRUCTIVE NOTICE — RECORDING IN WRONG RECORD — WATER WORKS SYSTEM — WHEN PERSONAL PROPERTY.

A water works plant and system, with its pipes, mains, fixtures, rights, privileges and franchises, are personal property when the land to which they are attached does not belong to the water works company, and it has but a limited easement in the streets and lands through which its pipes are laid for the delivery of water; and a mortgage thereof, when recorded in the record of real estate mortgages, instead of that of chattel mortgages, does not afford constructive notice, under Bal. Code, §§4558, 4559, which provide that a mortgage of personal property is void as against creditors of the mortgagor, or subsequent purchasers or incumbrancers for value and in good faith, unless acknowledged and recorded in the office of the county auditor of the county in which the property is situated, in a book kept exclusively for that purpose.

TAXES — PAYMENT BY MORTGAGEE OF PERSONAL PROPERTY — LIENS.
    The holder of a chattel mortgage upon personalty, who pays delinquent taxes thereon acquires no additional lien thereby, by virtue of Laws 1891, p. 322, §109, which provides that any person who has a lien, by mortgage or otherwise, upon any real property on which the taxes have not been paid, may pay such taxes, and the same shall constitute an additional lien.

Appeal from Superior Court, Clallam County.—Hon. JAMES G. McCLINTON, Judge. Reversed.

*Ira Bronson* and *R. C. Wilson,* for appellant.

*W. L. Marquardt* and *George C. Hatch,* for respondent.

The opinion of the court was delivered by·

ANDERS, J.—The respondent moves to strike appellant's brief in this case for the alleged reasons:    (1) That appellant has failed to print in his brief the findings of fact and conclusions of law made by the lower court; and (2) that appellant has also failed to refer in his brief to the record by page, as required by the rules of this court.    Rule 8 of this court provides that briefs shall contain a clear statement of the case, so far as deemed material by the party, with reference to the pages of the transcript for verification; and ·that in equity causes and actions at law tried by the court without a jury, the party or parties appealing shall print in their brief the findings of fact, with the exceptions thereto, on which any question is sought to be raised by them on the appeal.    Although these provisions have not been literally complied with by appellant, they have been substantially observed, and the motion to strike is therefore denied.

    This action was instituted by the respondent to foreclose a mortgage on a system of water works in Port

Angeles, alleged to have been executed to respondent by the Port Angeles Gas, Water, Electric Light & Power Company, Limited, to secure the payment of a promissory note made by said company for $20,000, dated February 21, 1891, and payable one year thereafter; and also to foreclose a mortgage on certain real estate situated in Port Angeles, executed by defendants C. E. Mallette and wife, as further security for the payment of said promissory note. The complaint alleges the due incorporation, under the laws of this state, of the Port Angeles Gas, Water, Electric Light & Power Company, Limited; that on the 21st day of February, 1891, said corporation was the owner of, and engaged in operating at Port Angeles, Washington, a system of water works for the purpose of supplying the inhabitants of Port Angeles, a municipal corporation of the fourth class, with water, and which said system of water works consisted of a reservoir or dam on a stream of water flowing through said town, commonly known as "Frazier's Creek," with pipes or mains leading therefrom through, over, and under the streets, alleys, and other public places of said town, to the dwellings of the inhabitants thereof, through which pipes and mains said water flowed by gravity, together with the right to said flowing water in said stream by appropriation, and a franchise from said town permitting it to so lay its pipes and mains and operate said system of water works therein, with certain tools and fixtures, altogether constituting its system of water works or plant; the making and delivery of the said note and the executing of the said mortgage, copies of which note and mortgage are set out in full therein; that said mortgage was duly recorded in the office of the auditor of Clallam county, Washington, on March 7, 1891, and indexed direct and reverse; that the plaintiff

paid taxes levied on said water plant, aggregating the sum of $2,931.40, for the protection of his mortgage lien; that no part of said note, except $5,000 of the interest thereon, has been paid, and that no part of said taxes has been paid; that the Angeles Water Company is a corporation duly organized under the laws of this state; and that said Angeles Water Company and the defendant, A. P. Burwell, as trustee, claim some interest in the property covered by plaintiff's mortgage; and that said claim, if any they have, is subordinate to the lien of plaintiff's mortgage. Judgment is demanded in the complaint against the Port Angeles Gas, Water, Electric Light & Power Company, Limited, for the amount due on said note, and for said taxes, interest, attorney's fees, and costs; that the said mortgage be adjudged to be a first lien on all of said mortgaged property, and that the same be sold and the proceeds thereof be applied in payment of the amount due plaintiff.

The mortgagor, the Port Angeles Gas, Water, Electric Light & Power Company, Limited, was served with summons, and defaulted, and the Angeles Water Company seems to have made no defense. The defendant Burwell, in his answer, denied the allegations of the complaint, except that the two defendant companies were corporations, and alleged affirmatively, certain facts showing the invalidity of the plaintiff's note and mortgage, and averred, in effect, that in June, 1892, the Angeles Water Company became the owner of the water works, rights, and privileges of the Port Angeles Gas, Water, Electric Light & Power Company, Limited, mentioned in plaintiff's complaint, by purchase from one C. E. Mallette, who purchased the same from the last mentioned company; that the said Angeles Water Company issued forty bonds of $1,000 each, and, to secure

the payment thereof, executed and delivered to a trustee a certain deed of trust or mortgage of the property described in plaintiff's complaint, and other property in said deed of trust or mortgage described; that the said trust deed or mortgage was executed as a chattel mortgage and was recorded in the office of the auditor of Clallam County, both in the records of real estate mortgages and in the records of chattel mortgages; that said bonds were delivered as collateral security for the payment of certain notes made by said Mallette, and sold for the benefit of the said Angeles Water Company, and that the proceeds thereof were received by said company; that none of said notes had been paid and that no part of said bonds had been paid, except the interest thereon up to June 1,. 1894; that the Angeles Water Company surrendered possession of the property mentioned in plaintiff's complaint and in the said trust deed or mortgage to the trustee; that the said Angeles Water Company duly appropriated the water of said Frazier's Creek after it purchased said property; that none of the purchasers of said bonds or of said notes, or any agents or attorneys of any of said purchasers, had, at the time of such purchase, any knowledge or notice of plaintiff's mortgage, and that the trustee named in said deed of trust or mortgage had no knowledge or notice of the mortgage of plaintiff at the time he received said trust deed or mortgage. And the defendant Burwell demanded judgment against the Angeles Water Company for the amount due on said bonds and for the foreclosure of said trust deed, etc. The new matter pleaded in the answer was denied by the reply. The plaintiff obtained judgment against his mortgagor in accordance with the prayer of the complaint, and a decree foreclosing the mortgage as a paramount lien on the prop-

erty described in the complaint, together with the usual order of sale. Judgment was also rendered in favor of defendant Burwell, as trustee, and against the defendant Angeles Water Company, establishing and foreclosing the trust deed. From the judgment and decree in favor of the plaintiff the defendant Burwell has appealed.

It appears from the record that the Port Angeles Gas, Water, Electric Light & Power Company, Limited (hereinafter designated as the "first company," was incorporated, under the laws of the state of Washington, in the year 1890. In November, 1890, the town of Port Angeles granted to C. E. Mallette, his associates, successors, and assigns, by ordinance, the right for twenty-five years to construct, operate, and maintain water works in said town, and to supply the town and its inhabitants with water, with the right to lay, relay, connect, disconnect, and repair its mains and pipes along, through, under, and over the streets, alleys, wharves, and other public places in said town. And it was provided in the ordinance that the town should have the right to purchase the plant after five years at a price to be fixed by appraisers. Prior to February 21, 1891, the date of the respondent's note and mortgage, said franchise was transferred by said Mallette to the first company, the respondent's mortgagor. On said February 21, 1891, the first company had commenced the construction of its water works, the same being the only water plant ever constructed at Port Angeles. On that date the mains and pipes had been purchased for the plant and were in the possession of the company, but only a portion of the mains had been laid; and the dam subsequently constructed on Frazier's Creek for the purpose of storing the water of said stream and of divert-

ing it into the company's mains had not then been erected, although the company had made preparation for its construction. This dam was constructed some distance south of the corporate limits of the town, upon a section of school land owned by the state, and no other dam has ever been constructed or used for the purpose of supplying water for the plant by either of said companies. No permission or authority was ever obtained, in writing or otherwise, from the state, for the construction or maintaining of said dam, or for laying or maintaining the pipe line of said water works through said school lands. The pipe line, when constructed, extended northerly from the dam, and said school land, over the premises of private parties. No deed of right of way was ever obtained by the first company from any of the persons whose lands were crossed by the pipe line; no proceedings were ever had to condemn the water in said stream, or the right of way for the pipe line, and no compensation was ever paid for the same, and no contract was ever made therefor. And it does not appear that the first company ever owned any land in any way connected with its water plant. On the 1st day of June, 1891, the principal mains of the plant were permanently connected together and buried in the ground, and connected with various buildings in Port Angeles, and on that day water was turned into the mains and pipes, and thereafter flowed therein by force of gravity. On March 31, 1892, the first company, for a valuable consideration, sold and conveyed to C. E. Mallette, the property described in the respondent's mortgages, and on the same day said Mallette sold and conveyed the same to the Angeles Water Company, which company executed and delivered the trust deed or mortgage to secure the payment of its bonds, as stated in the answer and so-called "Cross-complaint" of ap-

pellant. Neither the bonds nor the notes which they were given to secure were paid, and prior to the commencement of this action the Angeles Water Company delivered to appellant Burwell, as successor of the original trustee, full possession and control of the water plant and other property of said company, and said trustee held such possession and control at the time of the trial of this action. A lot of mains, pipes, etc., which were purchased by the first company for the plant were never used in said plant, but are now stored at Port Angeles, and seem to be claimed by both the respondent and the appellant as covered by their respective mortgages.

Although the record in this case is quite voluminous, and many errors are assigned by appellant in his brief, the real points argued and relied on by appellant as grounds for a reversal of the judgment are not numerous. The material errors alleged are: (1) That plaintiff (respondent) failed to prove that he loaned or advanced any money to the first company; (2) that the note and mortgage set out in the complaint are defective and insufficient to give constructive notive to appellant Burwell, or to any one; (3) that said mortgage was not recorded in a volume kept exclusively for the recording of mort·· gages of personal property and was not indexed as required by law; and (4) that said note and mortgage were not authorized by said company through its board of trustees, or at all. It is conceded by the respondent that the trustee named in the mortgage or trust deed executed by the Angeles Water Company had no actual notice or knowledge of respondent's mortgage, and it therefore follows that, if the said trustee was not charged with constructive notice thereof, the trust deed, having been given for a valuable consideration, must be deemed a valid and prior lien upon the property described therein.

Our statute provides that a mortgage of personal property is void as against creditors of the mortgagors or subsequent purchasers and incumbrancers of the property for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith and without any design to hinder, delay, or defraud creditors, and is acknowledged and recorded in the same manner as is required by law in conveyance of real property. 1 Hill's Code, § 1648; Bal. Code, § 4558. And it is further provided that such mortgage must be recorded in the office of the county auditor of the county in which the property. is situated, in a book kept exclusively for that purpose. 1 Hill's Code, § 1649; Bal. Code, § 4559. The respondent's mortgage, it is conceded, was recorded in the records of real estate mortgages only; and if, as appellant contends, it is a mortgage of personal property, the record imparted no notice to appellant, and it will not be necessary to determine any question other than that presented by the third assignment of error.

It is a rule almost without exception that a mortgage or other instrument which is entitled to registration must, in order to be effective as notice to third persons, be recorded in the book prescribed by law. *Manhattan Trust Co. v. Seattle Coal & Iron Co.,* 16 Wash. 499 (48 Pac. 333, 737); *Hinchman v. Point Defiance Ry. Co.,* 14 Wash. 349 (44 Pac. 867); Webb, Record of Title, § 252.

The mortgage which the respondent is seeking to foreclose is set forth in the complaint as a part thereof. It recites that the said mortgagor mortgages to the mortgagee the following described *personal property,* to wit: "All its water pipes, mains, fixtures, plant, and any and all its property now placed and to be placed in its water

system, together with all rights, privileges, securities, and franchises" of the mortgagor. The complaint then alleges that the said mortgage was acknowledged, and was accompanied by the affidavit of the mortgagor that it was made in good faith and without any design to hinder, delay, or defraud creditors, and that it was recorded, etc. From the language of the mortgage and the allegations of the complaint it would seem that the respondent, at the time of the commencement of this action, considered the instrument in question a mortgage of personal property, in all respects, in accordance with all the statutory requirements. But it is now insisted by the learned counsel for the respondent that this is a real estate, and not a chattel, mortgage, and that it was properly executed and recorded as such. No part of the mains and pipes covered by respondent's mortgage was connected with Frazier's Creek, or used for the purpose of conveying water, at the time the mortgage was made; and, as the greater portion thereof was neither laid in the ground nor connected together at that time, it can hardly be doubted that at least the unconnected portion, if not the whole, was in fact personal property, and properly so considered by the parties to the mortgage. Being personal property at the time they were mortgaged, by what means, or upon what principle, have these water pipes and mains been transmuted into real estate? We do not understand that the learned counsel for the respondent claims that they really became fixtures by reason of their having been laid under ground or through the streets of the city; for, if it be true that they thereby became fixtures, the ownership thereof was thus transferred to the proprietor of the land to which they were affixed, which the respondent does not concede. It is true that this property was so imbedded in the soil that,

8-24 WASH.

under ordinary circumstances, it might have been deemed a fixture; but such annexation did not necessarily change its character, or relieve the respondent from the duty of properly recording his mortgage.

"A mortgage of articles that are afterwards so annexed or affixed to real estate as to ordinarily constitute fixtures must be recorded as a chattel mortgage, and the fact that under this construction the examination of title to realty will necessarily involve an examination of the chattel mortgage record, does not change the rule." Webb, Record of Title, § 252; and see cases cited.

The real contention on the part of the respondent seems to be that the water works, as constructed and operated, must be deemed real estate by reason of its fixed locality; or, in other words, because it is immovable, and, hence, according to the law as announced by Blackstone, real estate. It is not claimed, as we have already intimated, that the pipes and mains, separately considered, are fixtures and therefore real property, but it is insisted that the "plant" as a whole is real estate, for the reason, as stated in the brief of counsel, that "the principal thing in a water works is the water, and it is as immovable and fixed as the land." This statement as to the character of property in water cannot be accepted as strictly accurate. While it is true that water in a running stream is deemed in law a part of the land over which it flows, it is also true that, after it has been diverted from its original channel and conveyed elsewhere in pipes for distribution or sale, it loses its original character and becomes personal property. *People ex rel. Heyneman v. Blake,* 19 Cal. 579; *Parks Canal & M. Co. v. Hoyt,* 57 Cal. 44.

Counsel for the respondent has cited cases holding that telegraph lines and telephone lines and electric light poles

and wires are real estate, under statutes relating to taxation or to mechanic's liens; and also a case from California holding that a mining right on public land is real estate (*Merritt v. Judd,* 14 Cal. 63); and still another case from the same state, in which it was held that a flume with running water was realty (*Union Water Co. v. Murphy's Flat Fluming Co.,* 22 Cal. 620). In *Keating I. & M. Co. v. Marshall Electric L. & P. Co.,* 74 Tex. 605 (12 S. W. 489), cited by respondent, the court held that the electric light poles, wires, etc., were real estate and subject to mechanic's liens, because it was impracticable to separate them from "the lot and improvements thereon" owned by the company. And to the same effect is *Hughes v. Lambertville Electric Light, H. & P. Co.,* 53 N. J. Eq. 435 (32 Atl. 69), also cited by respondent. Neither of these cases is applicable to the facts in the case at bar, it being conceded, or at least not denied, that the first company owned no lots or buildings to which its pipes and mains were appurtenant. In *Merritt v. Judd, supra,* the court held that a claim to public mineral land—a quartz lead—was practically a freehold estate, though it recognized the fact that in so deciding it departed from the technical rules of law. The decision was, in effect, based on the doctrine of *stare decisis,* the court observing in the course of the opinion that, "from an early period of our state jurisprudence, we have regarded these claims to public mineral lands as titles." After stating the reason why the courts of the state had given mining claims the recognition of legal estates of freehold, the court in that case said:

"If to decide thus, be a departure from some technical rules of law, it is but following other rules, which hold that a system of decisions, long established and long acted upon, shall not be departed from when important rights

have vested under it, merely because the reasons upon which it rests might not, in the judgment of subsequent judges, be considered sound."

In *Union Water Co. v. Murphy's Flat Fluming Co.,* *supra,* the court held that the sluice and flume, in that case, which was used for mining purposes, was in the nature of real estate, and the mortgage upon it included all improvements then upon the line of the work and also all those afterwards put thereon; but it does not appear that there was any question made by the parties to the action as to the character of the property, or that there was any agreement or understanding as to its character, between the parties to the mortgage there under consideration, such as appears in the case at bar. And, moreover, it appears that in California miner's flumes and ditches are declared by statute to be real estate. Deering's Code Civil Proc., § 657 *et seq.*

In *Western Union Tel. Co. v. State,* 40 Am. Rep. 99, cited by respondent, it was held that the telegraph line was taxable, under the statute of Tennessee, as real estate. In disposing of the question, the court said:

"We treat the telegraph line as partaking of the nature of realty, in analogy to the now settled doctrine that railroads and rolling stock . . . are so treated."

The case, however, which seems to be principally relied upon by respondent as supporting the judgment of the court below is that of *Appeal of North Beach & M. R. R. Co.,* 32 Cal. 500. In that case the board of supervisors of the city and county of San Francisco were authorized, by an act of the legislature, to widen Kearney street in said city, and proceedings for that purpose were instituted by the board. By the provisions of the statute the board were authorized to assess the expenses of the work upon the owners and occupants of houses

and lands and railroad corporations and companies that might be benefited thereby. The sum of $20,000 was assessed against the street railway company, as its just proportion of the expenses of the work, and the assessment was confirmed by the county court. From the order of confirmation the company appealed. The order of confirmation was sustained in the supreme court by a majority opinion (SANDERSON and RHODES, JJ., dissenting), on the ground that the estate of the railroad company in the street was real property and benefited by the improvement. The court in that case seems to have concluded that the railroad company was, by the legislature, vested with an easement in fee in the street—a freehold interest—and that that, in connection with its line of track, was real estate. Some weight was also given, in the opinion of the court, to the fact that the interest of the railroad company was local,—fixed to the particular street,—and could not be enjoyed beyond or independent of that fixed locality. But the principles announced by the learned court in that case—conceding them to be correct—are not strictly applicable to the present one. In this case the first company did not have an easement in fee in the street or in any other land at the time it made its mortgage to the respondent. Its license to use the street, or its easement therein, was limited to a definite time, and was therefore less than a freehold. It was a chattel real and subject to the rules relating to personal property. 1 Schouler, Personal Property (3d ed.), § 20. If it had been the owner of lands and buildings with which its pipes and mains were connected, such pipes and mains would have been deemed a part of the realty in the nature of appurtenances or fixtures, in accordance with the rule laid down in *Appeal of Des Moines Water Co.,* 48 Iowa, 324, and

*Monroe Water Co. v. Township of Frenchtown,* 98 Mich.
431 (57 N. W. 268). See, also, *Commonwealth v. Low-*
*ell Gas Light Co.,* 12 Allen, 75; *Fall River v. County*
*Commissioners,* 125 Mass. 567; *Keating I. & M. Co. v.*
*Marshall Electric L. & P. Co., supra,* and *Hughes v.*
*Lambertville Electric Light, H. & P. Co., supra.* In
*Memphis Gas Light Co. v. State,* 6 Cold. 310 (98 Am.
Dec. 452), it was held that pipes laid through the streets
of the city, by permission of the corporate authorities,
did not become a part of the realty, but were personal
property, and the property of the company. Upon the
facts presented by the record we are of the opinion that
the property described in respondent's mortgage was and
is personal property; and it therefore follows that the
learned trial court erred in adjudging that the lien of
said mortgage is prior and paramount to that of appel-
lant's trust deed or mortgage.

It is stipulated by the parties hereto that the property
involved in this controversy was assessed for the years
1892, 1893, and 1894, pursuant to law, as personal prop-
erty; that the taxes assessed thereon became delinquent;
that the said property was advertised for sale by the
county treasurer; and that the respondent, for the pur-
pose of protecting his claim and lien, paid the full amount
of the taxes levied upon the property. It seems that re-
spondent also paid the taxes on the water plant for sub-
sequent years, and the sums so paid were adjudged a
lien upon the property assessed by virtue of § 109, p.
322, Laws 1891, which provides that any person who
has a lien, by mortgage or otherwise, upon any real
property on which the taxes have not been paid, may
pay such taxes, and that the same shall constitute an ad-
ditional lien. As this provision relates to liens upon
real property only, the payment of the taxes by respond-

ent created no lien in his favor; and, although it would seem that those who were benefited thereby are morally bound to repay the same to the respondent, no judgment can be rendered therefor in this proceeding.

Having concluded that the lower court erred in declaring respondent's mortgage to be a first lien on the property described therein, other than the suburban lots therein mentioned and described, that part of the judgment and decree is reversed, and the cause remanded with directions to enter a judgment and decree establishing and declaring appellant's trust deed or mortgage to be a prior and superior lien to that of respondent's mortgage.

REAVIS, C. J., and FULLERTON and DUNBAR, JJ., concur.