[No. 25107. Department Two. January 17, 1935.]

GREAT NORTHERN RAILWAY COMPANY, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

[1]Reported in 39 P. (2d) 999.

*Thomas Balmer* and *Edwin C. Matthias,* for appellant.

*A. C. Van Soelen* and *John E. Sanders,* for respondent.

BLAKE, J.—Pursuant to authority vested in it by Rem. Rev. Stat., § 9216 [P. C. § 7546], the city council of the city of Seattle passed an ordinance

" . . . providing for the laying off, opening, extending and establishing of Second avenue from Yesler way to Fourth avenue south; . . . providing for the condemnation, appropriation, taking and damaging of land and other property necessary therefor."

A condemnation suit was thereafter instituted in accordance with the provisions of Rem. Rev. Stat., § 9217 [P. C. § 7547]. In this petition, two pieces of property belonging to the Great Northern Railway Company and Northern Pacific Railway Company were described. One was a small triangular piece at the southwest corner of lot 5, block 19, D. H. Maynard's Addition. Lot 5 is on the north side of, and adjacent to, Jackson street. The other piece of property was in block 20 of the same addition. As described, it was in the shape of a trapezoid, the northerly side of which was coincident with the south line of Jackson street, and the southeasterly side was coincident with the west line of Fourth avenue south.

Many years before this condemnation proceeding

was instituted, the city had granted a franchise to the railway companies to occupy Jackson street (below grade) with railroad tracks. The ordinance granting this franchise was known as the tunnel franchise. Shortly after the franchise was granted, the railway companies developed what is known as the King street station, or terminal. The station proper is situated to the south of Jackson street, in block 20. At the time the condemnation suit was started, there were five main tracks extending from the station north across Jackson street. The most westerly of these was known as track No. 5. Branching off from track No. 5, as it crossed Jackson street, was a track known as the Armour spur. This spur extended north of Jackson street. As it crossed the north line of Jackson street, the spur swung to the west completely away from track No. 5. Jackson street was carried across the tracks by means of a viaduct. The west end of the viaduct was supported by a row of columns approximately fifteen feet west of, and parallel to, the west rail of track No. 5.

In the extension of Second avenue, that street was carried over the tracks at the King street terminal by means of a viaduct extending from Jackson street to Fourth avenue south. In building this viaduct and in adjusting it to, and connecting it up with, the old Jackson street viaduct, the row of columns above mentioned was taken out. A new row of columns supporting the westerly sides of both viaducts was installed. This new row of columns, as constructed in Jackson street, was east of the old row some six or seven feet. As thus located, they were so close to the Armour spur track as to prevent the operation of trains over it. Consequently, the spur had to be moved and reconstructed.

The Great Northern Railway Company brought this

action to recover, as damages, the cost of moving and reconstructing the spur track. The city interposed the defense of *res judicata*. The city's position is that the judgment in the condemnation suit bars the present action, because it involves an item of damages that could and should have been litigated in that suit. The trial court sustained the defense, and entered judgment dismissing the action. Plaintiff appeals.

It is to be remembered that neither in the ordinance authorizing the condemnation nor in the petition for condemnation was any mention made of appellant's franchise rights in or to the railroad tracks across Jackson street. The description of the property to be condemned, contained in the stipulation for judgment and in the judgment itself, followed the description contained in the petition for condemnation. No specific mention whatever is anywhere made in the record of the condemnation case of any intention on the part of the city to take or damage appellant's tracks or franchise rights in Jackson street.

There was, however, a blue print attached to the stipulation for judgment, which showed the general plan for the construction of the Second avenue viaduct. On this blue print, it is indicated that the old row of columns supporting the west end of the Jackson street viaduct is to be removed and a new row of columns supporting both viaducts is to be installed six or seven feet east of the old row. From the plan, it is plainly indicated that the new row of columns would interfere with the operation of trains on the Armour spur, and would necessitate a change in the location of that track. From this, respondent contends that the item of damages for removal and reconstruction of the spur was put in issue in the condemnation suit, and that appellant, having failed to claim

damages therefor in that action, is now barred by the judgment in that case.

We do not think respondent's position is sound. Appellant's rights under its franchise were just as much property rights as if it had owned the title in fee simple to the land occupied by Jackson street. The right to take or damage such a property right may be acquired only by eminent domain. *Seattle v. Columbia & Puget Sound R. Co.*, 6 Wash. 379, 33 Pac. 1048.

It would hardly be contended, we think, had appellant been the owner of the fee of Jackson street, that the city would have acquired, under the stipulation and judgment, any right to take or damage any portion thereof. It is true that the damage here complained of was incident to the construction of the Second avenue viaduct, but it was not necessarily incident to the condemnation proceedings. And that is where this case differs from *Carpenter-McNeil Investment Co. v. Spokane*, 73 Wash. 232, 131 Pac. 823, and kindred cases cited by respondent. In that case, the condemnation suit was instituted *after the improvement was completed*. The court held that all damages sustained were, therefore, in issue in the condemnation suit, and that judgment therein was *res judicata* as to all damages sustained as a result of the improvement.

Here, the condemnation suit was instituted and carried to judgment *prior to the commencement of the improvement*. Appellant had the right to assume that the city, in making the improvement, would not take or damage any of its property other than that specifically described in the stipulation and judgment. When, during the progress of the improvement, appellant's franchise rights in Jackson street were invaded, it immediately laid claim to damages. All that the city

had paid for in the condemnation proceeding was the right to take and damage the specifically described property lying in blocks 19 and 20. It has no legal nor moral right to take more than it paid for. *Provine v. Seattle,* 59 Wash. 681, 110 Pac. 619.

The doctrine of *res judicata* will not be invoked to sustain a city's claim of right to take or damage a distinct and separate property right which was not specifically included in the condemnation proceedings, and for which compensation was not made. *Spokane v. Colby,* 16 Wash. 610, 48 Pac. 248; *Hinckley v. Seattle,* 74 Wash. 101, 132 Pac. 855, Ann. Cas. 1915A, 695, 46 L. R. A. (N. S.) 727.

▇ The parties stipulated the amount of damages to be $1,508.07, "with such interest, if any, as the court may find."

With respect to the allowance of interest, Lewis, in his work on Eminent Domain (3d ed.), § 742, says:

"In the absence of any statutory provisions controlling the subject, the rules in respect to interest must be derived from the constitutional provision requiring just compensation to be made for property taken. Where damages are assessed for property which has already been lawfully appropriated to public use, interest should be allowed from the time of the appropriation, or entry on the property. . . . Where property is taken possession of for public use, whether by consent or wrongfully, and a suit or proceeding is afterwards commenced for the just compensation, interest should be allowed from the date of the possession."

Reconstruction of the "Armour spur" was completed July 1, 1929. "Possession" of the old site of the spur may be said to have been taken by the city as of that time. Under the stipulation, therefore, interest should be allowed from that date.

The judgment is reversed, and the cause remanded

374

with directions to enter judgment for appellant in the sum of $1,508.07, with interest at six per cent from July 1, 1929.

BEALS, STEINERT, and HOLCOMB, JJ., concur.

