**UNITED STATES v. PUGET SOUND POWER & LIGHT CO.**

No. 10654.

Circuit Court of Appeals, Ninth Circuit.

Nov. 6, 1944.

Rehearing Denied March 15, 1945.

Norman M. Littell, Asst. Atty. Gen., Frank P. Keenan, Sp. Asst. to Atty. Gen., and Vernon L. Wilkinson and Lawrence Vold, Attys., Department of Justice, both of Washington, D. C., for appellant.

Holman, Sprague & Allen and Emory E. Hess, all of Seattle, Wash., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment in a condemnation proceeding holding the appellee's franchise to erect, maintain and have support for its poles and sustained power wires in Biles Street, King County, State of Washington, and to transmit electrical power thereby, is an easement taken by appellant in the proceeding. The District Court decided that appellant was liable to the appellee in the amount of the cost of installation elsewhere of such poles and wires for the service of a customer formerly served by the poles and wires removed on the taking of the easement.

In the instant proceeding there was condemned and taken the entire fee simple of the land constituting the street; that is to say, the underlying fee of the adjoining property owners, the right of way in the street belonging to the county, which comprises every right in the street including the right to give franchises for the erection and support of such power line poles and wires as those of the appellee. McCullough v. Interstate Power & Light Co., 163 Wash. 147, 300 P. 165 (electric power line); Brandt v. Spokane & I. E. R. Co., 78 Wash. 214, 138 P. 871, 52 L.R.A., N.S., 760 (power line to service electric powered street railway).

The amount of damages awarded is not controverted by appellant. The sole controversy is whether the franchise is (a) private property of the appellee "taken" by appellant in taking the fee or larger estate as in Duckett v. United States, infra, or (b) is merely a contract, or a license or permit merely in the nature of a contract between the county and the grantee of the franchise which may be breached by one or the other of the parties thereto, a contract not taken by appellant but merely frustrated by taking the fee simple title as in Omnia Commercial Co. v. United States, 261 U.S. 502, 511, 43 S.Ct. 437, 67 L.Ed. 773.

The parties are agreed that the character of appellee's right created by the franchise from the country is to be determined by the law of the State of Washington. Under the Washington law the franchise is a personal property and so

taxed under a provision of the Washington statute specifically enumerating it "* * * franchises, royalties and other personal property." *Commercial Electric Light & Power Co. v. Judson*, 21 Wash. 49, 56 P. 829, 831, 57 L.R.A. 78. No case is cited to us nor has our search found one holding that a mere contract is subject to taxation as personal property in Washington.

Unlike the Federal Constitution, the Constitution of the State of Washington provides in condemnation proceedings for compensation for damages to property as well as its taking. The state provision is:

"* * * No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. * * *" Wash.Const. Art. 1, § 16, Rem.Rev.Stat., Vol. 1, p. 373.

The Washington cases hold that the property in a franchise is one which may be either taken or damaged. While in some of these compensation is made for damaging the property in a street railway or power transmission line franchise, all hold the franchise confers a private right of property which may be damaged or taken from its owner. While damage to the property in a franchise may not be recovered under the Federal Constitution, the damage cases in Washington are significant as to the character of the property right in the franchise which is held to be damaged.

The first case holding a franchise is a property which is "taken" is *City of Seattle v. Columbia & P. S. R. Co.*, 1893, 6 Wash. 379, 33 P. 1048, 1052. There the railway had a franchise for its tracks on a public street which used the city's right of way on that street in common with pedestrians and other vehicles. The railway's tracks had been destroyed. Thereafter the city changed the grade so that such tracks could not be replaced and used. The question was whether there had been a taking of the franchise so to use that portion of the street. The court held there was such a taking, stating:

"* * * The property was the franchise,—the right to use the street for the purpose of constructing and operating tracks thereon. This was the material thing of value, and this was what was sought to be taken by the corporate authorities in the manner aforesaid, and it was just as much of a taking as though the tracks had been actually in existence at the time the ordinances were adopted. * * *"

It will be noted that if the franchise were a mere contract between the city and the grantee, breached by the action of the city, all the grantee would be entitled to under the Washington Constitution would be damages for the breach. Instead, it is held to be "taken." This case holding a franchise is property which may be taken by condemnation is relied upon in *Great Northern R. Co. v. City of Seattle*, 180 Wash. 368, 39 P.2d 999, where the court held that the property in a franchise may be damaged as well as taken. In holding that in a condemnation proceeding there had been no compensation for damaging the property in a franchise, the court described the character of the property right so damaged as (39 P.2d at p. 1001):

"* * * Appellant's rights under its franchise were just as much property rights as if it had owned the title in fee simple to the land occupied by Jackson street. The right to take or damage such property right may be acquired only by eminent domain. *Seattle v. Columbia & P. S. R. Co.*, 6 Wash. 379, 33 P. 1048."

Continuing as to the character of the franchise property, the court holds that it is something of which "possession" may be taken. One does not take possession of a mere contract. The opinion holds (39 P.2d at page 1001) with reference to the interest on the damages awarded that " 'Possession' of the old site of the spur may be said to have been taken by the city as of that time."

In the forty-two years between these two cases, the nature of such a franchise grant to a public utility was considered by the Supreme Court of Washington in many cases. In none does that court even mention it as a contract. In all it is described as a "property," though all could be disposed of on the theory that it was a mere contract, or a license which is merely contractual in its nature.

In the early case of Dunsmuir v. Port Angeles Gas, etc., Co., 24 Wash. 104, 63 P. 1095, 1099,[1] the question was whether a transfer of a franchise, recorded as for real property, gave notice to a subsequent grantee. It was held to give no notice because not recorded as a transfer of personal property. In determining the character of the franchise as personal property, the court held it to be an estate "less than a freehold" and therefore a "chattel real", stating (63 P. at page 1099):

"* * * In this case the first company did not have an easement in fee in the street or in any other land at the time it made its mortgage to the respondent. Its license to use the street, or its easement therein, was limited to a definite time, and was, therefore, *less than a freehold.* * * *" (Emphasis supplied.)

The court seems to regard the franchise "limited to a definite time" less than a freehold as analogous to such a chattel real as a leasehold, which, under the Washington law, is such a chattel. Myers v. Arthur, 135 Wash. 583, 238 P. 899, 900. In a federal condemnation the holder of such an interest as a leasehold must be compensated. A. W. Duckett & Co. v. United States, 266 U.S. 149, 151, 45 S.Ct. 38, 69 L.Ed. 216; Silberman v. United States, 1 Cir., 131 F. 2d 715, 717; United States v. Certain Lands in the City of Des Moines, D.C., Iowa, 46 F.Supp. 800, 802.

In the Duckett case the government, by condemnation, took the temporary use of property under lease. Lessee claimed for the taking of his leasehold. The ground of the opinion is stated to be at pages 150, 151 of 266 U.S., at page 38 of 45 S.Ct., 69 L.Ed. 216:

"* * * On the face of those acts it seems to us manifest that the United States, although not taking the fee, proceeded *in rem* as in eminent domain, and assumed to itself by paramount authority and power the possession and control of the piers named, against all the world. Ordinarily an unqualified taking in fee by eminent domain takes all interests and as it takes the *res* is not called upon to specify the interests that happen to exist. Whether or not for some purposes the new takers may be given the benefit of privity with the former holders, the accurate view would seem to be that such an exercise of eminent domain founds a new title and extinguishes all previous rights. Emery v. Boston Terminal Co., 178 Mass. 172, 184, 59 N.E. 763, 86 Am.St.Rep. 473; Farnsworth v. [City of] Boston, 126 Mass. 1, 8. In such a case we no more should expect to hear it argued that leaseholds were not to be paid for than that the former fee simple should not be, on the ground that it was gone and a new fee begun. A right may be taken by simple destruction for public use. United States v. Welch, 217 U.S. 333, 339, 30 S.Ct. 527, 54 L.Ed. 787, 28 L.R.A.,N.S., 385, 19 Ann.Cas. 680. See Peabody v. United States, 231 U.S. 530, 538, 34 S.Ct. 159, 58 L.Ed. 351. Here the taking purported to be a taking of the Bush Terminal docks, etc.—not of the title of the Bush Terminal Company, but of the things, to whomsoever they belonged. The notice was 'to whom it may concern.' The claimant was turned out like the others. We can see no ground for attributing to the United States the extraordinary intent to recognize and pay for other interests but to exclude the claimant. * * *"

While a franchise is property subject to assessment for ordinary direct taxes, the question arose whether it was taxable for a street improvement assessment as included in the words "lots, blocks, tracts, and parcels of land" of the statute authorizing the assessment. In City of Seattle v. Seattle Electric Co., 48 Wash. 599, 94 P. 194, 195, 15 L.R.A.,N.S., 486, the court held that the right created by the franchise was an "easement" and hence not within the statutory words, stating:

"* * * The respondent's rights therein are such and only such as these public authorities have conferred, and are, rough-

---

[1] Appellant cites from a preceding case, Wood v. City of Seattle, 23 Wash. 1, 62 P. 135, 140, 52 L.R.A. 369, the words referring to a franchise "is in its nature but a permit to use the streets of the municipality in a particular way for a particular purpose" as showing it a license merely to share a public easement as distinguished from an easement in the grantee. However, the brief writer omitted the preceding words "while it is property," thus conveying quite a different meaning. In the next volume of Washington reports the character of that "property" as a "chattel real" is declared and in the succeeding cases, considered infra, its character as an easement. None of these cases even mention the Wood case. Nor does the Wood case mention, much less purport to overrule, the City of Seattle case in 6 Wash.

ly speaking, the right to construct and maintain for a limited time a railway track on a fixed portion of the street, and the right to operate cars on such track for the purpose of carrying passengers and freight for hire. This does not constitute either a lot, block, tract, or parcel of land; nor does it constitute an interest in land, as that term is *ordinarily* understood. It is an *easement* only, and as such is not assessable under a power to assess lots, blocks, tracts, and parcels of land. Nor has the railway any such an *easement* in the street that a specific portion of it can be benefited in such a way as to warrant a special assessment on that particular part of its easement. * * *" (Emphasis supplied.)

A similar assessment for a street improvement was held invalid on the authority of this last cited City of Seattle case, in which the court comments on the intangible character of the property in a franchise. In re City of Seattle, 49 Wash. 109, 94 P. 1075, 1079.

In a later case, where the street assessment statute was amended, the franchise was held not assessable on the authority of the last two cases, repeating the language of the first City of Seattle case holding the franchise an easement. In re City of Seattle, 54 Wash. 460, 103 P. 807, 808.

A later Washington case held of an easement that, though "an incorporeal [that is intangible] right [it] is an interest in land" such as warrants the bringing of a suit to quiet title against an asserted cloud upon it. Humphrey v. Krutz, 77 Wash. 152, 157, 137 P. 806, 808.[2] This is though, as said in the first City of Seattle case, an easement "as ordinarily understood" is not an interest in land. Humphrey v. Krutz is a frank broadening of the area of a suit to quiet title. It certainly does not cover mere contracts or licenses which are no more than contracts. That in taking the fee the government is liable for the easement taken as a part of it, is apparent from

the decision in the Duckett case, supra. The Federal Government was held liable to the owner of an easement in a suit condemning the fee in United States v. Sunset Cemetery Co., 7 Cir., 132 F.2d 163, 167. Cf. Tenney Tel. Co. v. United States, 7 Cir., 82 F.2d 788.

It is obvious that none of these cases would have wasted effort in holding the property in a franchise to be property "taken" by destruction by the city granting the franchise, or a "chattel real", or an "easement" if, as contended by appellant, the franchise is a mere contract or a license or permit merely contractual in nature, to be terminated by a contractual right in the city or county granting it or merely frustrated by a condemnation.

We hence agree that the early case of Columbia & P. S. R. Co. v. City of Seattle, supra, and the late case of Great Northern Ry. v. City of Seattle (1935) supra, indicate the law of Washington to be that appellee's "rights under its franchise were just as much property rights as if it had owned the title in fee simple to the land occupied * * *. The right to take or damage such a property right may be acquired only by eminent domain. Seattle v. Columbia & P. S. R. Co., 6 Wash. 379, 33 P. 1048."

Here, under the decision of Duckett v. United States, and other cases cited supra, the property of the franchise was taken whether it was a chattel real or an easement.

The judgment is affirmed.

Upon Petition for Rehearing.

In the petition for rehearing, as at the argument, but a single question is raised—that is as to the character of the property of one having a franchise for a term of years granted by a municipal corporation of the State of Washington of the right of support and maintenance of electric light and power poles in its streets or

---

[2] In Town of Castle Rock v. Furth, 78 Wash. 47, 138 P. 317, cited by appellant, the franchise required the grantee to make a contract with the city to furnish the city with electric lights. It failed to offer the contract and suit was commenced on the bond given for the performance of the contract. The discussion of contract rights refers to the contract with the city which the grantee of the franchise failed to offer, not to the character of the property in the franchise itself.

Also cited by appellant is Tacoma Ry. & Power Co. v. City of Tacoma, 79 Wash. 508, 140 P. 565, 568, a forfeiture case in which was invoked the general doctrine that equity abhors a forfeiture. The phrase "franchise or contract" is used to mean different kinds of the "property" referred to in the sentence "These principles, of course, mean that ordinarily property will not be declared forfeited where the franchise or contract leaves a discretion in the court."

highways.[1] The franchise here in question is not revocable by the action of the grantor municipal corporation.

The petition contends that under the law of the State of Washington such franchises granted since Washington became a state are revocable by an act of the Legislature under a provision in the state Constitution, and hence, under the law of that state, it is no more than a contract which is frustrated by a condemnation by the United States of the underlying fee.

We do not agree. It is stipulated that the Great Northern Railway's franchise considered in Great Northern Ry. Co. v. Seattle, 180 Wash. 368, 39 P.2d 999, was granted in January, 1903, long after the state Constitution was adopted. Nevertheless the Washington Supreme Court treats that franchise exactly as it treated the territorial franchise in the case of Seattle v. Columbia & Puget Sound R. R. Co., 6 Wash. 379, 33 P. 1048, 1052, and based its decision upon the law as established in the earlier case of the territorial franchise.

So also of the franchise in Dunsmuir v. Port Angeles Gas, etc., Co., 24 Wash. 104, 63 P. 1095, holding that the franchise is a chattel real. The franchise there was granted in November, 1890, after the adoption of the Constitution of the State of Washington in 1889.

It is argued that because the United States is the plaintiff suing to condemn, the United States law regarding a franchise given by the United States, similar in kind to that here owned by appellee, should apply and cites cases which hold that certain revocable franchises given by the United States not to be property "taken" in a condemnation proceeding but merely contractual rights frustrated by the condemnation.

The reverse situation shows the fallacy in the contention that it is the character of the plaintiff seeking condemnation which determines the character of property affected by the condemnation. Assume the State of Washington sought to take from a private citizen such a United States franchise. If that franchise had been granted by the State of Washington it would have been an easement or a chattel real under the Washington law. It would be an absurdity which would be properly pressed by the condemning Washington attorney, that the merely contractual character of the federal franchise was transmuted into an easement or chattel real by the fact that the State of Washington is the plaintiff.

The petition for rehearing is denied.

---

[1] The finding of the cost of removal and replacement is treated by the parties as the value of the franchise, if it be held that it is a property right which is taken by the condemnation.