[No. 36050.   En Banc.   June 28, 1962.]

WASHINGTON NATURAL GAS COMPANY, *Appellant*, v. THE
CITY OF SEATTLE, *Respondent.**

*Cartano, Botzer & Chapman*, by *John W. Chapman*, for
appellant.

*A. C. Van Soelen* and *Charles R. Nelson*, for respondent.

WEAVER, J.—This appeal presents a single issue: The
extension of the Alaska Way viaduct having made neces-
sary the relocation of gas mains under certain city streets,
is the city of Seattle liable for the relocation costs?

*Reported in 373 P. (2d) 133.

Seattle City Ordinance No. 39, adopted June 6, 1873, and amended February 12, 1881, by ordinance No. 234, granted plaintiff's predecessors in interest a franchise to manufacture, distribute, and sell gas within the city of Seattle. In order to distribute the gas, the grantees were given the

". . . right, use, privilege and franchise to lay and extend gas pipes and apparatus for the conveyance of gas throughout all streets, alleys and public places of the city of Seattle, . . ."

The franchise is silent on the question presented by the instant case; it does not designate who shall bear the cost of relocating utility facilities should relocation be necessary.

Plaintiff's underground gas mains in East Marginal Way and Spokane Street had to be relocated because they interfered with construction of concrete footings and columns supporting an extension of the Alaska Way viaduct. In furtherance of the public interest, plaintiff Washington Natural Gas Company, a corporation, agreed to relocate its facilities, but reserved its right to maintain an action to recover expenses incurred.

Plaintiff now appeals from a judgment dismissing with prejudice its action against the city for $38,869.76, the reasonable cost incurred. Plaintiff contends that the court's judgment denying its claim for reimbursement for the cost of relocating its facilities is violative (a) of Art. 1, § 16 (amendment 9), Washington Constitution, for it is deprived of property ". . . without just compensation having been first made . . ." and (b) of Art. 1, § 10, and Amendment 14, § 1, to the Constitution of the United States.

Defendant city contends that plaintiff's franchise did not create a vested right to maintain its gas mains in a fixed location in a particular street; that franchise rights are qualified by the police power; that a utility corporation, absent a controlling franchise provision, must pay the cost of removal and relocation of its facilities from public streets when required by public convenience and necessity; and that plaintiff has not been deprived of property

". . . without just compensation having been first made . . ."

Paraphrasing the language used by the author of this opinion in *State v. Public Util. Dist. No. 1 of Clark Cy.*, 55 Wn. (2d) 645, 349 P. (2d) 426 (1960), we call attention to the fact that the findings of fact are silent on one point: There is nothing to indicate that plaintiff is now unable to furnish gas to any of its customers under the terms of its franchise. The conclusion is inescapable—this was a removal of public utility facilities from certain portions of public streets and a relocation of the facilities in order that the Alaska Way viaduct could be built and the purpose of the franchise could be continued.

Plaintiff urges that *State v. Public Util. Dist. No. 1 of Clark Cy.*, *supra*, is distinguishable from the instant case because the franchise required the utility to pay the cost of relocating its facilities. We agree. Further, plaintiff urges that the court ". . . went beyond the express provisions of the franchise . . ." in its use of certain language in the opinion, thus indicating a belief that the language is dictum. In view of this court's decision in *Western Gas Co. v. Bremerton*, 21 Wn. (2d) 907, 153 P. (2d) 846 (1945), we adopt the language of *State v. Public Util. Dist. No. 1 of Clark Cy.*, *supra*, as applicable to, and determinative of, the instant case.

The court said:

"The great weight of authority supports the following rule:

" 'In the absence of an express and definite provision to the contrary, a utility company maintains its structures and rights in a public street subject to the paramount right of the city to use its streets for all proper governmental purposes. A grant, franchise, easement or other right accorded to a utility company by public authority, to maintain structures in public streets, is at all times subject to the police power of the sovereign, and unless expressly agreed to otherwise in the franchise, the company must, at its own expense, make such changes as the public convenience and necessity require, and it is bound to alter, remove, relocate, support and maintain a structure, when

necessary for the city's carrying out a function in the interest of public health, safety or welfare, and this is so, whether the city has fee title or a mere easement in the street.' Rhyne, Municipal Law 512 (1957).

"Many authorities are cited in support of this text. The same rule is stated in 25 Am. Jur., Highways, § 183; 18 Am. Jur., Eminent Domain, § 161." (p. 649). 38 Am. Jur., Municipal Corporations §§ 547, 548; 38 C. J. S., Gas § 12(2).

Further, the court said:

"Recent authorities recognize the rule that public utility companies operating under a franchise must bear the cost of removing and of relocating their facilities, as it is made necessary by highway improvements. . . ." (p. 650)

The following cases from other jurisdictions are illustrative of the rule that if the franchise is silent as to payment of the cost of relocation of utilities, made necessary by public improvements, the cost must be borne by the franchise holder. *San Antonio v. Bexar Metropolitan Water Dist.*, 309 S. W. (2d) 491 (Tex. 1958); *First Nat. Bank of Boston v. Maine Turnpike Authority*, 153 Me. 131, 136 A. (2d) 699 (1957); *Brunswick & Topsham Water Dist. v. W. H. Hinman Co., Inc.*, 153 Me. 173, 136 A. (2d) 722 (1957); *Southern Bell Tel. & Tel. Co. v. State*, 75 So. (2d) 796 (Fla. 1954); *Southern Bell Tel. & Tel. Co. v. Commonwealth*, 266 S. W. (2d) 308 (Ky. 1954); *Peoples Gas Light & Coke Co. v. Chicago*, 413 Ill. 457, 109 N. E. (2d) 777 (1952); *Public Water Supply Dist. of Jackson Cy. No. 2 v. State Highway Comm.*, 244 S. W. (2d) 4 (Mo. 1951); *New York City Tunnel Authority v. Consolidated Edison Co. of N. Y., Inc.*, 295 N. Y. 467, 68 N. E. (2d) 445, rehearing denied 70 N. E. (2d) 412, reargument denied 296 N. Y. 745, 70 N. E. (2d) 551 (1946).

In support of its contention, plaintiff relies upon *Seattle v. Columbia & Puget Sound R. Co.*, 6 Wash. 379, 33 Pac. 1048 (1893), and *Great Northern R. Co. v. Seattle*, 180 Wash. 368, 39 P. (2d) 999 (1935). We do not find the cases apposite. In the *Columbia* case, *supra*, the court found that

" . . . The effect of the raising of the grades of these

various streets was such as to *absolutely destroy the franchise* . . . It [the city's right to raise the grade of its streets] cannot be exercised to the extent of *working a destruction of such a franchise* previously granted. . . ." (p. 390) (Italics ours.)

In the *Great Northern* case, *supra,*

" . . . the city had granted a franchise to the railway companies to occupy Jackson street *(below grade)* with railroad tracks. . . ." (p. 370) (Italics ours.)

The "below grade" designation becomes meaningful when it is realized that Jackson street was carried across the "below grade" portion of the street by a viaduct. Thus, the "below grade" portion of the street used by the railroad tracks, pursuant to its franchise, was definitely designated and fixed. When the city built an addition to the viaduct, new supporting columns were placed too close to the "below grade" railroad track and prevented the operation of trains; the railroad's franchise right was invaded and damaged.

In the case before us, plaintiff did not have a property right in a fixed location. Its franchise right " . . . to lay and extend gas pipes and apparatus for the conveyance of gas throughout all the streets . . ." has neither been damaged nor destroyed, as in the *Great Northern* and *Columbia* cases, *supra.*

Plaintiff contends that the franchise provision that no one shall

" . . . have the right to lay pipe for any purpose within two and a half (2½) feet of the center of the gas pipe, except when necessary to cross the same . . ."

gave it a property right in a fixed and definite location as against the city. We do not agree. The provision is not subject to this broad interpretation. As this court said in *Granger Tel. & Tel. Co. v. Sloane Bros.* 96 Wash. 333, 334, 165 Pac. 102 (1917):

" . . . It cannot be reasonably argued that the county authorities may grant the right to a public service corporation to occupy a highway to the exclusion of the public, or the exclusion of the right of the county authorities to

improve the highway so that it may be used by the public. A franchise granted upon a highway such as this would necessarily be qualified by these rights. . . ."

■ We do not find the city's action violative of plaintiff's state constitutional rights.

Nor do we find the city's action violative of the cited sections of the federal constitution. *New Orleans Gas Light Co. v. Drainage Comm. of New Orleans*, 197 U. S. 453, 49 L. Ed. 831, 25 S. Ct. 471 (1905), is dispositive of plaintiff's contention to the contrary. The court said:

" . . . The gas company, by its grant from the city, acquired no exclusive right to the location of its pipes in the streets, as chosen by it, under a general grant of authority to use the streets. The city made no contract that the gas company should not be disturbed in the location chosen. In the exercise of the police power of the State, . . . it has become necessary to change the location of the pipes of the gas company so as to accommodate them to the new public work. In complying with this requirement at its own expense none of the property of the gas company has been taken, and the injury sustained is *damnum absque injuria*." (p. 462)

The judgment is affirmed.

ALL CONCUR.