[No. 11364. Department Two. February 20, 1914.]

A. M. BRANDT et al., *Appellants*, v. SPOKANE & INLAND EMPIRE RAILROAD COMPANY, *Respondent*.[1]

EMINENT DOMAIN — STREETS — ADDITIONAL SERVITUDES — POWER LINES FOR STREET RAILWAY. A street railway company having a valid franchise to operate street cars by electric power over certain designated streets of the city, may maintain power lines upon other dedicated streets for the purpose of transmitting power in aid of the operation of its lines for public travel within the city, and the location of such a power line in a street not used by street cars would not be an additional burden upon abutting property for which compensation could be claimed.

SAME. The fact that power was transmitted over such line for the use also of the company's interurban line outside of the city would not affect the rights of abutters, where the occupancy of the street was not thereby in any way changed.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered October 21, 1912, upon

[1]Reported in 138 Pac. 871.

findings in favor of the defendant, dismissing an action for an injunction, after a trial on the merits to the court. Affirmed.

*Charles P. Lund,* for appellants.

*Graves, Kizer & Graves,* for respondent.

PARKER, J.—The plaintiff, A. M. Brandt and wife, seek to have the defendant, Spokane & Inland Empire Railroad Company, enjoined from erecting and maintaining upon a public street of the city of Spokane, in front of their land, poles with wires thereon, to carry electric power. They contend, in substance, that such use of the street constitutes an additional use burdening their land, the right to which has not been acquired by the public by the dedication of the street, nor by compensation made therefor in pursuance of eminent domain proceedings. A trial in the superior court upon the merits resulted in judgment denying the relief prayed for, and dismissing the action. From this disposition of the cause, the plaintiffs have appealed.

The controlling facts are not in dispute, and may be summarized as follows: Appellants are owners of a lot in the city of Spokane, fronting upon Columbus street, which street was dedicated to public use as such in the platting of the addition in which appellants' lot is situated. At the time of the commencement of this action, respondent, without the consent of appellants, was proceeding to dig holes, and preparing to set a line of poles, and string wires thereon, along Columbus street, in front of their lot, for the purpose of conveying a high power electric current from the place of its generation, at respondent's station some miles distant northwest of the city, to and along Columbus street to its station in the city, for the principal purpose of supplying power in the operation of its street railway system within the city, a portion of such electric power also to be used in the operation of respondent's suburban railway lines. None of re-

spondent's lines of railway are laid longitudinally on Columbus street. Respondent claims the right to construct and maintain its power line along Columbus street, under a franchise grant to its predecessor in interest, which franchise it now owns, providing, so far as we need here notice its terms, as follows:

"That the Spokane Light and Power Company, of Spokane, its successors or assigns, be and is hereby granted the right to erect, maintain and use wires for conveying electricity for electric light, electric heat and electric power purposes, and the necessary poles or conduits for the support of the same, and all necessary appurtenances thereto, on, over, along and under all the streets and alleys of the city of Spokane."

The nature and extent of the franchise under which respondent is operating its street railway system is not shown in the record before us, but no claim is made that such system is not operated under a proper grant of franchise from the city, with the right to use electricity as its motive power. We assume, however, that respondent has no franchise right to maintain a street railway line longitudinally upon Columbus street. We proceed, then, upon the assumption that respondent has franchise rights granted by the city under which it is maintaining electric street railway lines upon streets of the city other than Columbus street, and also the above quoted franchise right to maintain an electric power line upon Columbus street, to supply the motive power of its street railways upon other streets.

That these are valid franchise rights of respondent, as against the city, is not questioned by counsel for appellants, his contention being that the use thus sought to be made of Columbus street in front of appellants' lot is not a use which the city or the public has ever acquired the right to make of that street, by dedication or otherwise; and that neither the city nor its franchise grantee, respondent, can lawfully make such use of that street as against the right of appellants.

Counsel for appellants has cited numerous decisions of the courts dealing with the question of additional burdens upon highways, resulting from the permanent maintenance of structures thereon, such as telegraph, telephone, and electric power lines which are not in aid of travel. We shall not attempt to review the conflicting authorities upon the question of such structures maintained upon a highway being additional burdens, but confine our inquiry to the solution of the problem here presented, which may be reduced to this: Does the maintenance of a power line in front of appellants' lot, of the nature here contemplated, constitute a burden upon the street and their lot in addition to that authorized by the dedication of the street as such to public use, in the light of the fact that the comtemplated power line is to be used in aid of travel, not upon that street, but upon other streets of the city?

That the maintenance of street railways using electricity as their motive power, including maintenance of electric power lines in connection therewith, consisting of poles and wires permanently erected upon and over portions of streets along which such railways run, is not an additional burden, though such power lines permanently occupy portions of the street surface, and though it is a comparatively new method of propelling conveyances upon streets, is no longer a matter of serious controversy in this country. In 1 Lewis, Eminent Domain (3d. ed.), § 161, it is said:

"There is a very unanimous concurrence of the courts in the position that the construction and operation of a street passenger railway on the surface of a street by means of the trolley system is a legitimate street use and not the imposition of an additional burden on the fee, and that the abutter, whether he owns the fee or not, is not entitled to compensation for any damages resulting therefrom."

In *Halsey v. Rapid Transit St. R. Co.,* 47 N. J. Eq. 380, Vice Chancellor Van Fleet, answering a contention that the placing of poles in the middle of a street for the purpose of

using electric power to propel street cars along the same street constitutes an additional burden, at pp. 384, 392, said:

"The lands are acquired for the purpose of providing a means of free passage, common to all the people, and consequently may be rightfully used in any way that will subserve that purpose. By the taking the public acquire a right of free passage over every part of the land, not only by the means in use when the lands were taken, but by such other means as the improvements of the age, and new wants, arising out of an increase in population or an enlargement of business, may render necessary. It is perfectly consistent with the purposes for which streets are acquired that the public authorities should adapt them, in their use, to the improvements and conveniences of the age  .  .  .  The poles and wires are to be used as helps to the public in exercising their right of passage over the street. They form part of the means by which a new power, to be used in the place of animal power, is to be supplied for the propulsion of street cars, and they have been placed in the street to facilitate its use as a public way and thus add to its utility and convenience. The whole matter may be summed up in a single sentence: the poles and wires have been placed in the street to aid the public in exercising their right of free passage over the street. That being so, it seems to me to be clear beyond question, that the poles and wires do not impose a new burthen on the land, but must, on the contrary, be regarded, both in law and reason, as legitimate accessories to the use of the land for the very purposes for which it was acquired. They are to be used for the propulsion of street cars, and the right of the public to use the streets by means of street cars, without making compensation to the owners of the naked fee in the street, is now so thoroughly settled as to be no longer open to debate. It would seem then to be entirely certain, that the occupation of the street by the poles and wires, takes nothing from the complainant which the law reserved to the original proprietor when the public easement was acquired. This view is in strict accord with the uniform current of judicial opinion on this subject."

It is of interest to note that these observations were made by the learned Chancellor in the year 1890, early in the period

of transition from horse power to electric power as applied to street railways, and when but a comparatively short time had elapsed since the moving of street cars by electricity was wholly unknown. In *Commonwealth v. Morrison*, 197 Mass. 199, 83 N. E. 415, 125 Am. St. 338, 14 L. R. A. (N. S.) 194, Justice Rugg, speaking for the court touching the extent of the easement right possessed by the public in a street, said: "The easement acquired by the public includes every reasonable means of transportation for persons and commodities, and of transmission of intelligence, which the advance of civilization may render suitable for a highway." This was quoted with approval in *Cheney v. Barker*, 198 Mass. 356, 84 N. E. 492, 16 L. R. A. (N. S.) 436.

Eminent authority has used the expression: "The primary law of the highway is motion." 1 Lewis, Eminent Domain (3d ed.), § 182. Joyce, Electric Law, § 318. This, apparently, is the thought which has led some courts to regard the placing of telegraph and telephone poles in the highway as constituting an additional burden. It is evident, however, that, while this is an appropriate expression of the principal controlling thought touching the public's use of highways, it is not without qualification in this age of invention and progress. It is at least certain, as we have seen from the above noticed authorities, that the erection of poles and wires for the transmission and application of electric power to the propulsion of street cars, upon a street where such cars are actually operated, does not constitute an additional burden, though portions of the street are thereby permanently occupied so as to prevent motion of physical objects over such permanently occupied portion of the street.

We do not understand counsel for appellant to seriously contend that respondent would not have the right to maintain a power line consisting of poles and wires of the nature here contemplated, to be used in connection with its street railway, when located upon the portions of the street upon which such railway lines are operated; but his principal contention

seems to be that because respondent has no line of street railway along Columbus street, it, for that reason, had no right thereon as against appellants, though it has a franchise from the city, to maintain its proposed power line along that street for the purpose of transmitting power to propel its cars upon other streets of the city. In this way, counsel for appellants seeks to draw the controversy within the rule of those decisions holding that telegraph and telephone poles and lines are additional burdens, upon the theory that respondent's proposed power line does not aid travel upon that particular street. The question then is: Does this fact lessen respondent's right to maintain poles and wires upon Columbus street as against appellants? A situation quite similar to this was dealt with in *Richards v. Citizens' Water Supply Co.*, 125 N. Y. Supp. 116. The questions of a road being urban or suburban, and the laying of a large water pipe line therein to supply other portions of the city somewhat distant therefrom, without rendering any service to property abutting upon the road, were involved, among others. In concluding its discussion of these questions, the court, at page 121, said:

"The question arises whether Black Stump road, notwithstanding its present physical characteristics, is to be deemed urban or rural in its legal relation to public easements. If it is to be deemed urban, the public easement in it may well be great enough to subject it to burdens in favor of other parts of the same municipality, for the municipality is one entity, and should not be considered as an aggregation of separate localities. In varying extents all the localities in the city of New York share ultimately in each other's growth and increase in value, and each should share in the street burdens for the benefit of each other. In no other way can the various localities of the city of New York be tied together into one whole, instead of remaining practically separate and isolated communities. All the streets and highways of the city should be deemed of it as well as in it, and all should be considered urban in their subjection to public easements, irrespective of any special present participation

of any locality in the advantages which follow. In *Van Brunt v. Town of Flatbush, supra,* [128 N. Y. 50], it was held that the streets and roads of the then town of Flatlands could not be subjected to a public easement for the laying of a sewer system for the exclusive use of the residents of the neighboring town of Flatbush. There, however, there were two distinct municipalities, each independent in government of each other, and with no legal community of interest. The rule there applied has no necessary application where there is but one municipality and a legal community of interests. It is a familiar circumstance that relief sewers are constructed through city streets to relieve a situation existing in a locality of the city distant from the greater part of the sewer. Likewise water mains are laid through city streets as trunk lines to increase or furnish a supply in various special localities. The right to lay these sewers and water mains under the urban easement seems never to have been questioned heretofore on the part of any owner of the fee of the streets or highways through which such sewers or water mains are laid. Therefore, we think that Black Stump road should be deemed subject to urban easements for the benefit of the city at large, or any locality in it requiring such use."

This doctrine is given even broader application in Massachusetts, where it is made applicable to the whole commonwealth, upon the theory that all of its inhabitants have equal right to the use of all of the highways thereof, whether urban or suburban. In *Cheney v. Barker, supra,* dealing with the question of a gas pipe line, conveying gas along a street of a town to another town for the exclusive service of the latter, being an additional burden upon the streets of the former, the court, at page 363, said:

"But the petitioners claim that the pipe line under the statute in question differs from an ordinary gas main, because it is not intended for the use of the citizens of Chelsea, its presence is not and is not intended to be beneficial to the abutting and adjoining property, and therefore, as they contend, cannot be regarded as fairly incident to the public use of the highways in the community in which they are located. . . .

"Our roads or public ways are established for the common good and for the use and benefit of all the inhabitants of the Commonwealth. *Hodgdon v. Haverhill,* 193 Mass. 406, 410. *Prince v. Crocker,* 166 Mass. 347. The mere fact that the burden of their construction and maintenance has to a large extent been put upon the cities and towns in which they are situated gives to those cities or towns or to their inhabitants no peculiar privileges in such ways."

In dealing with the question here presented, we desire to have it understood that our holding is limited to the particular question here involved, and that we express no opinion upon the question of telephone, telegraph, or other electric power lines unconnected with street railways being an additional burden; nor do we express any opinion as to when permanent structures upon highways generally will be regarded as an additional burden, when such structures do not aid travel upon highways. We are here only concerned with a street railway and electricity applied thereto as its motive power through a power line located upon a street other than those upon which the railway lines run, but within the corporate limits of the same city. We are of the opinion that all of the streets of a city are, in a sense, one street, or, we might better say, one system of streets, in which all of the citizens of the city have a common interest, so far as modes of travel and aids thereto are concerned; and that the public have a right to have power transmitted over any of the streets of a city to aid travel, not only upon the particular streets upon which such power is transmitted, but upon any other street of the city. Respondent having valid franchise rights upon Columbus street for the purpose of maintaining its power line thereon, it may maintain such power line in aid of the operation of its street car lines upon other streets of the city.

Some suggestion is made in appellants' brief, though we are not able to see that counsel seriously so contends, that the fact that the power to be transmitted over respondent's proposed power line is to be used not only in the operation of

its street railways, but also, to some extent, in the operation of its suburban railways, impairs its rights here claimed. The use of the power exclusively in the operation of respondent's suburban railways might present a question worthy of serious consideration; but it is not claimed here, nor is there anything in this record to suggest, that the permanent occupancy of portions of Columbus street by this proposed power line would be any different in extent if no portion of the power transmitted along such line were used in the operation of respondent's suburban railway system. We have seen that the line is to be constructed and used principally for the operation of street railways within the city. We conclude that the fact that some of the power is to be used in the operation of suburban railways does not lessen respondent's right to maintain the power line as contemplated, in view of the fact that the occupancy of the street would apparently be the same as if the power were applied only to the operation of the street railway. We are of the opinion that the judgment must be affirmed.

It is so ordered.

CROW, C. J., MORRIS, FULLERTON, and MOUNT, JJ., concur.