[No. 30196. Department Two. September 16, 1947.]

THE STATE OF WASHINGTON, *on the Relation of Dillard D. York et al., Appellants,* v. THE BOARD OF COUNTY COMMIS-SIONERS OF WALLA WALLA COUNTY *et al., Respondents.*[1]

[1]Reported in 184 P. (2d) 577.

*Bernard J. Lehrer* and *Herbert Ringhoffer (Laing, Gray & Smith,* of counsel), for appellants.

*Albert N. Bradford* and *Wm. Keylor Smith,* for respondent Board of County Commissioners of Walla Walla County.

*Cameron Sherwood* and *Charles F. Luce,* for respondent Walla Walla Electric Cooperative, Inc.

STEINERT, J.—Relators herein instituted this action, seeking thereby to procure a writ of mandamus directing the defendant board of county commissioners of Walla Walla county and its individual members to rescind and nullify a franchise theretofore granted by the board to the defendant Walla Walla Electric Cooperative, Inc.

The individual relators, seventy in number, are residents and taxpayers of Walla Walla county, owning or occupying property abutting on or adjacent to certain roads and streets described in the granted franchise. The additional relator, Pacific Power & Light Company, also a taxpayer, is a public service corporation engaged in the business of supplying and distributing electric power in the particular area described in the franchise and elsewhere in the county.

The defendant Walla Walla Electric Cooperative, Inc., hereinafter referred to as Cooperative, is a nonprofit corporation, organized and existing under and by virtue of

Laws of 1907, chapter 134, p. 255 (Rem. Rev. Stat., §§ 3888 to 3900 [P.P.C. §§ 467-1 to 467-25], both inclusive). Under its articles of incorporation, adopted August 13, 1945, its purposes are, among other things, to generate, purchase, acquire, sell, and distribute to and for its members only, as a league of consumers, electric energy, on a strictly cooperative basis without profit to the association, but with express inhibition against engaging in any business for hire or serving the general public.

The franchise here in question was granted to the Cooperative by order of the county board dated December 17, 1945. The order recited that "it is for the public interest to grant the franchise," and gave to the Cooperative the right to construct, maintain, and operate an electric transmission and distribution line upon and along specified portions of certain county roads and streets in Walla Walla county, in the vicinity of and beyond College Place, then an unincorporated community. The total length of pole lines authorized thereby is about nine and one-half miles.

The franchise is, by its terms, nonexclusive and extends for a period of twenty-five years. It authorizes erection and maintenance of a single line of poles at points designated by the board; establishes minimum vertical clearances of wires when crossing the roadway; directs that the poles and wires be so erected and maintained as not to interfere with the use of the highways for travel; requires Cooperative to accept common occupation and use of the highways wherever similar utilities have previously been granted franchises containing common-user clauses, and, in turn, to permit joint use and occupation of its poles and equipment by similar utilities to which franchises may be granted in the future; and provides that Cooperative shall bear all expense of construction, improvement, alteration, and removal work, and shall save the county harmless from any and all damages, claims, or injuries that may occur by reason of the construction, maintenance, and operation of its electric transmission and distribution line.

The petition and affidavit for writ of mandamus filed by the plaintiff relators alleged that no public interest was, or could be, served by granting a franchise to defendant Cooperative. It also alleged that one of the principal roads or streets designated in the franchise and upon which Cooperative proposed to erect and maintain high voltage transmission and distribution lines was already occupied on each side by high voltage power lines and other electric wires; and that it would be impracticable, dangerous, unnecessary, unsafe, and hazardous to the public to permit the construction and operation of another high voltage electric power line along that county road. It further asserted that the application for the franchise was made not for the purpose of serving the public, but as part of a plan to dismember and disorganize the relator Pacific Power & Light Company, and to coerce the sale of its local properties and facilities to Cooperative or its affiliates.

The relators further alleged in their petition that, at the opening of the hearing on the application for the franchise, held December 17, 1945, representatives of the then unincorporated community of College Place appeared before the board of county commissioners and requested that the hearing be adjourned, without immediate action thereon, until after an election which was to be held on the following day for the purpose of determining whether or not that community should be incorporated; that the request should have been granted, in order that the community, if and when incorporated, might have the opportunity of exercising its authority to either allow or disallow the construction and maintenance of additional electric lines within its area; that the request was refused or ignored; and that the election thereafter held resulted in the incorporation of the community as the city or town of College Place. In conclusion, the relators alleged in their petition that the action of the board of county commissioners in granting the franchise was arbitrary and capricious, and was an unlawful failure to exercise any discretion in behalf of the public

interest, in consequence of which the order granting the franchise should be rescinded and annulled.

An order to show cause having been issued, the defendants demurred separately to the petition. These demurrers were overruled, and the defendants thereupon, by separate answers, denied the material allegations of the petition. The matter thus came to trial before the superior court, sitting without a jury. After trial, the court entered an order dismissing the action. The order was based on the following recital contained therein:

"And it appearing to the Court that there is not sufficient evidence or showing to warrant a conclusion that the action of the County Commissioners in granting the franchise to the Walla Walla Electric Cooperative, Inc., was arbitrary or capricious."

The plaintiff relators have appealed.

Among the many assignments of error is one which raises a question of primary and paramount importance. That question is whether a board of county commissioners in this state has authority to grant to a private membership corporation, such as Cooperative, a franchise permitting it to construct and operate electric power lines along county roads, when that corporation is not empowered, and does not intend, to serve the general public. The relators, appellants here, contend that highways are dedicated to public use, and that any use other than a "public use" as contemplated by Art. I, § 16, of our state constitution, relating to eminent domain, constitutes an additional burden upon the fee of owners whose lands abut upon the highway, which burden the county commissioners have no power to impose.

This contention finds support in a few cases, and, since it affects the property rights of many of the individual appellants herein, requires careful consideration and answer.

█ It is true that land dedicated as a highway is thereby devoted to a general, or public, use. *Forrester v. Fisher*, 16 Wn. (2d) 325, 133 P. (2d) 516; 2 Thompson, Real Property (Perm. ed.) 44, § 481; 1 Elliott, Roads and Streets (4th ed.) 140, § 122. See *State ex rel. Schroeder v. Superior Court*, 29 Wash. 1, 69 Pac. 366.

■ Normally, the interest acquired by the public is but an easement. *Rowe v. James,* 71 Wash. 267, 128 Pac. 539; *Bradley v. Spokane & I. E. R. Co.,* 79 Wash. 455, 140 Pac. 688, L. R. A. 1917C, 225, appeal dismissed, 241 U. S. 639, 60 L. Ed. 1215, 36 S. Ct. 285; *Lewis v. Seattle,* 174 Wash. 219, 24 P. (2d) 427, 27 P. (2d) 1119. But whatever the nature of the interest may be, it is held in trust for the public, and the primary purpose for which highways and streets are established and maintained is "for the convenience of public travel." *State ex rel. Spokane & B. C. Tel. & Tel. Co. v. Spokane,* 24 Wash. 53, 63 Pac. 1116; *Bradley v. Spokane & I. E. R. Co., supra; Hadfield v. Lundin,* 98 Wash. 657, 168 Pac. 516, Ann. Cas. 1918C, 942, L. R. A. 1918B, 909; *Reed v. Seattle,* 124 Wash. 185, 213 Pac. 923, 29 A. L. R. 446.

■ In addition to this primary purpose, however, there are numerous other purposes for which the public ways may be used, such as for water mains, gas pipes, telephone and telegraph lines, etc. These are termed secondary uses and are subordinate to, and permissible only when not inconsistent with, the primary object of the highways. *State ex rel. Spokane & B. C. Tel. & Tel. Co. v. Spokane, supra.* It is the legal limitation upon these secondary uses which is the subject of our inquiry with respect to appellants' first contention.

■ The essential principle to be kept in mind is that the legislature, within constitutional limitations, has absolute control over the highways of the state, both rural and urban. *State ex rel. Spokane & B. C. Tel. & Tel. Co. v. Spokane, supra; State ex rel. County Attorney v. Des Moines City R. Co.,* 159 Iowa 259, 140 N. W. 437; *Cheney v. Barker,* 198 Mass. 356, 84 N. E. 492, 16 L. R. A. (N.S.) 436; 1 Elliott, Roads and Streets (4th ed.) 574, § 509.

The legislature has, in practice, traditionally delegated the exercise of this control to counties and municipal corporations, except in the case of primary, and to some extent secondary, state highways.

The express statute under which the franchise here under consideration was granted is Rem. Rev. Stat., Vol. 7A, § 6450-38 [P.P.C. § 610-3], reading in part as follows:

"The board of county commissioners of the several counties in the State of Washington is hereby authorized and empowered to grant franchises to persons or private or municipal corporations to use the right of way of county roads in their respective counties for the construction and maintenance of water works, gas pipes, telephone, telegraph and electric light lines, sewers and any other such facilities . . . ."

The section next provides that, on application being made to the board for any such franchise, hearing thereon shall be had after due public notice and that:

"If, after such hearing, the board of county commissioners shall deem it to be for the public interest to grant such franchise in whole or in part, the board of county commissioners may make and enter proper resolution granting the franchise applied for or so much thereof as it deems to be for the public interest, and may require any such utility and its appurtenances to be placed in such location on or along the county road as the board of county commissioners finds will cause the least interference with other uses of the county road."

The section further provides that the person or corporation constructing or operating such utility shall be liable to the county for all necessary expense incurred in restoring such county road to a suitable condition for travel; limits the length of the franchise to fifty years; and requires that the facilities of the holder of any such franchise shall, if necessary, be removed, at the expense of the holder thereof, to other location on the county road in the event such road is to be constructed, altered, or improved, or shall become a primary state highway.

There is no contention that this statute, enacted in 1937 and in substance a re-enactment of Laws of 1905, p. 210, § 1, is unconstitutional, but it is asserted by the appellants that the franchise with which we are here concerned does not meet the terms of the statute. The point urged by them is that, as a matter of law, a franchise issued to a private corporation not intending to serve the general public cannot be "for the public interest." They insist that "public interest" is "public use," and no more.

Appellants' argument must be examined and considered in two aspects. First, we must inquire whether the legislature meant that the term "public interest," as used in the statute, is synonymous with, or is to be restricted to, the idea of "public use," as that concept is embodied in the eminent domain provision of our state constitution; and second, even though the legislature may not have intended that meaning, whether franchises issued pursuant to the statute are nevertheless essentially so restricted because of the very nature of highways as ways dedicated for "public use."

The first aspect has to do with statutory construction. "Public interest," while not a phrase susceptible of sharp or precise definition, is nevertheless plainly different from, and wider in connotation than, "public use," a term long employed to denote justification for appropriation by eminent domain proceedings. As every lawyer knows, limitations upon "public use" are subjects of frequent and intense controversy and important litigation. We deem it highly unlikely that, with its experience and observation, the legislature would have deliberately used a different term if it had meant "public use" in the sense so well understood.

There is other language in the section of the statute here under consideration which refutes appellants' contention. Applicants for franchises may be "*persons* or private or municipal corporations." (Italics ours.) Use may be made of the right of way of county roads for the construction and maintenance of "facilities" by persons or corporations operating such "utility." It seems to us that if the legislature had intended to restrict county franchises to private and municipal corporations privileged to exercise the right of eminent domain, it would not only have omitted any reference to "persons," but also have used the phrase "public service facilities" instead of "facilities," and the phrase "public utility" instead of "utility."

Pertinent to the consideration of the statutory usage of the terms is the fact that this court has commented on the distinction between public interest and public use:

"It must also be conceded that public interest is not identical with public use. There are many enterprises which are in a sense of public interest, which are not devoted to public use." *State ex rel. Weyerhaeuser Timber Co. v. Superior Court,* 71 Wash. 84, 127 Pac. 591.

Accord: *Neitzel v. Spokane International R. Co.,* 65 Wash. 100, 117 Pac. 864, 36 L. R. A. (N.S.) 522.

■ In our opinion, to sustain appellants' argument is to ignore the peculiar wording of the statute, or else to ascribe to the legislature an inexcusable lack of precision in its expression. We therefore hold that the legislature did not intend that the phrase "for the public interest" should be taken to mean "for public use"; stated otherwise, it did not intend that county franchises be restricted to enterprises justifying the exercise of the right of eminent domain.

■ We are of the further opinion that it cannot be held, as a matter of law, that a co-operative association engaged in the business of generating, purchasing, acquiring, selling, and distributing electric power for the benefit of its members is not acting for the public interest. It has been said that immense benefits have flowed from the development of rural electrification systems by co-operatives. H. C. Wolfe, The Challenge of Cooperatives, 37 Public Utilities Fortnightly (1946) 80. To the contrary, it has also been argued that co-operatives, particularly when they enter into competition with established private electric utilities, cause economic losses to the public. J. A. Whitlow, The Failure of Competition in Public Utility Regulation, 39 Public Utilities Fortnightly (1947) 597. These, however, are matters for the consideration of the administrative agencies vested with discretion to grant or withhold franchises as the public interest may determine. The courts have no jurisdiction to interfere with the honest exercise of that discretion, so long as those agencies act within the terms of the powers delegated to them.

The second aspect of our inquiry is more complex. As we have already noted, highways are dedicated by the landowners and established by the state for public use. The immediate question under this second aspect is whether any

incidental, or secondary, use of the public easement which of itself would not justify the exercise of the right of eminent domain, is nevertheless permissible and within the power of the county to grant to an applicant which is a private corporation.

We find no "precedent" directly applicable to the case at bar. Related cases which we have examined deal (1) with the right of abutting owners to resist uses authorized by local authorities, in excess of the power delegated to those authorities, e.g., *Schwede v. Hemrich Bros. Brewing Co.,* 29 Wash. 21, 69 Pac. 362 (private railroad in street); *Reed v. Seattle, supra* (filling station in right of way); and *Motoramp Garage Co. v. Tacoma,* 136 Wash 589, 241 Pac. 16, 42 A. L. R. 886 (public urinal under sidewalk); (2) with the right of abutting owners to compensation when their special interests in the street are impaired by an authorized activity, e.g., *Kaufman v. Tacoma, O. & G. H. R. Co.,* 11 Wash. 632, 40 Pac. 137 (commercial railroad tunneled under street); *Grand Rapids & I. R. Co. v. Heisel,* 38 Mich. 62, 31 Am. Rep. 306 (commercial railroad in street), and cases cited therein; (3) with the right of abutting owners to make use of the land subject to the public easement where such use is not inconsistent with that easement, e.g., *Lanham v. Forney,* 196 Wash. 62, 81 P. (2d) 777 (private domestic water pipes under streets); *Colegrove Water Co. v. Hollywood,* 151 Cal. 425, 90 Pac. 1053, 13 L. R. A. (N.S.) 904 (private irrigation pipe under street); *People ex rel. Mather v. Marshall Field & Co.,* 266 Ill. 609, 107 N. E. 864, Ann. Cas. 1916B, 743, L. R. A. 1915F, 937 (tunnel under street); and (4) with the exemption of corporations and other associations, not serving the public, from state regulations or special taxation, although they occupy highways with their facilities, e.g., *Inland Empire Rural Electrification v. Department of Public Service,* 199 Wash. 527, 92 P. (2d) 258 (electric power cooperative); *St. Louis v. Mississippi River Fuel Corp.* (C.C.A. 8th), 97 F. (2d) 726 (gas pipe line); *Southern California Edison Co. v. Railroad Comm.,* 194 Cal. 757, 230 Pac. 661 (mutual water company's main); *State Public Utilities*

*Comm. ex rel. v. Bethany Mutual Tel. Ass'n,* 270 Ill. 183, 110 N. E. 334, Ann. Cas. 1917B, 495 (mutual telephone line); *Garkane Power Co. v. Public Service Comm.,* 98 Utah 466, 100 P. (2d) 571, 132 A. L. R. 1940 (co-operative's electric power line); see note, 21 A. L. R. 1162, III.

From these cases, however, we discern fairly consistent principles, with which we are in accord, as follows:

■ I. The fact that highways are dedicated to public use implies that they must be maintained primarily as public ways; and

" . . . these public ways must be kept free from obstructions, nuisances, or unreasonable encroachments which destroy, in whole or in part, or materially impair, their use as public thoroughfares." 4 McQuillin, Municipal Corporations (Rev. 2d ed.) 134, § 1437.

II. Subject to this primary use, highways may be put to any of the numerous incidental uses suitable to public thoroughfares, and with those uses the owner of the abutting land has no right to interfere. The public easement

" . . . includes every reasonable means for the transmission of intelligence, the conveyance of persons, and the transportation of commodities which the advance of civilization may render suitable for a highway." *McCullough v. Interstate Power & Light Co.,* 163 Wash. 147, 300 Pac. 165.

"The restrictions upon its use are only such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement, and the inconveniences must be submitted to when they are only such as are incident to a reasonable use under impartial regulations." *Omaha & Council Bluffs R. Co. v. Omaha,* 114 Neb. 483, 208 N. W. 123, quoting from *Macomber v. Nichols,* 34 Mich. 212.

See, also, 1 Elliott, Roads & Streets (4th ed.) 559, § 495; 25 Am. Jur. 466, Highways, § 171.

■ Moreover, the benefit from the utility need not accrue to the abutting owner, nor even to the immediate neighborhood. Mere absence of direct benefit does not give to the abutting owner either the power to obstruct the intended use of the highway, or the right to compensation.

*Brandt v. Spokane & I. E. R. Co.,* 78 Wash. 214, 138 Pac. 871, 52 L. R. A. (N. S.) 760; *Cheney v. Barker, supra.*

III. The abutting owner nevertheless has a special interest in the right of way; and if an unreasonable encroachment on that interest is effected by the incidental use to which the highway is subjected, then he is entitled to compensation, even though the use is authorized. *Lund v. Idaho & W. N. R.,* 50 Wash. 574, 97 Pac. 665, 126 Am. St. 916; *Grand Rapids & I. R. Co. v. Heisel, supra.*

While there is a divergence of opinion in the cases as to what justifies compensation for an additional burden, it has been persuasively suggested that the line should be drawn at "unreasonable interference" with the rights of the abutting owner. *Cater v. Northwestern Tel. Exch. Co.,* 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, 51 Am. St. 543. Under this view, an unreasonable interference with the rights of abutting owners would be an additional burden upon the servitude, and as such would, it seems, amount to a taking or damaging of private property within the terms of Art. I, § 16, of our state constitution. Under that circumstance, the interference could not be justified unless it were for a public use. *Gray v. Ramsay,* 117 Wash. 255, 200 Pac. 1074, 204 Pac. 4.

IV. Poles and wires for carrying electric current are considered a customary incidental use of highways, and are not now generally deemed such an encroachment upon the right of abutting property owners as to afford them a right to compensation for the additional servitude to which their fee interests are subjected. *Brandt v. Spokane & I. E. R. Co., supra; McCullough v. Interstate Power & Light Co., supra.*

V. The protection of the public from unreasonable uses of the highways, within the limitations above suggested, is a political question, not a judicial one. This theorem has received the approval of this court and is well stated in *State ex rel. Spokane & B. C. Tel. & Tel. Co. v. Spokane, supra,* where the following language occurs:

"It is apparent that the secondary uses of the streets are physically restricted. When such limit is approached or

reached must be determined by some competent authority. The inconvenience, too, of the obstruction of the streets for any secondary uses . . . suggest the propriety of the control of such uses in the discretion of the municipality.

. . .

"The people of a municipality, who incur and pay the expenses for the construction and maintenance of their streets, and who largely use them, are usually most capable of exercising discretion in the secondary and subordinate purposes for which their streets shall be used."

 In our opinion, the rules which we have above summarized do not support appellants' contention that incidental uses of highways *must* be such as justify eminent domain proceedings. They suggest, rather, that the use must have some element of public benefit, and must not be inconsistent with the public use to which the highways are dedicated. 25 Am. Jur. 466, Highways, § 171.

We find support for our conclusion in *Penn-York Natural Gas Corp. v. Maltbie*, 164 Misc. 569, 299 N. Y. Supp. 1004, wherein the court stated:

"It has been said the duty to serve the public 'goes hand in hand with the privilege of exercising a special franchise . . . by the occupation of the public highways.' (CARDOZO, J., in *People ex rel. Cayuga P. Corp. v. Public Service Comm.*, 226 N. Y. 527, 532) [124 N. E. 105, 106.] The relationship between the duty and the privilege is not fully interdependent, however, where there is an express delegation of power to grant the franchise on one hand, and an ultimate public benefit to be obtained on the other. A contrary result would place too narrow an interpretation on what was said in the *Cayuga* Case."

And further:

"This corporation provides a means of gas supply to a public utility. It is engaged in a private business, but its business is closely related to the public interest. To carry the position of the respondents to its ultimate conclusion would operate to prevent the purchase of a supply of natural gas by a public utility from a private corporation regardless of public necessity or convenience."

This conclusion was consistent with the much earlier opinion of the New York court in *Plant v. Long Island R.*

*Co.,* 10 Barb. 26, wherein the plaintiff sought damages of the defendant for its excavation of a street in front of his store for the purpose of constructing a railroad tunnel. The defendant was authorized to perform the work by an ordinance of the common council of Brooklyn, pursuant to general authority over the public streets given to the council by statute. We quote from that opinion:

"It is said, however, that this power is qualified by that provision of the constitution, which requires that compensation shall be made to the owner of private property taken for public use.

"As far as we are aware, it has not been customary in this state, where the streets of cities have been appropriated to legitimate public uses, for the promotion of health, trade or commerce, to make compensation to the owners of adjoining lands. The reason of this, undoubtedly is, that the streets are laid out for such purposes as well as for highways and when the property of individuals is taken for streets, and the city makes compensation for the property so taken, it purchases and pays for the right to appropriate the land to all such legitimate uses, as custom and the public good require that a street should be appropriated to."

The sense of that opinion is that if a use is sanctioned by appropriate public authorities, and "in no manner whatever impair[s] the right of free passage and repassage," is not "injurious to the adjoining property," and is "either directly or indirectly advantageous" to the public, then it is lawful. We think that the foregoing statement is a correct summary of the principles governing the incidental uses to which our highways may be put.

 The results of cases decided by this court, including those cited above, are consistent with the rule suggested. We therefore hold that the mere fact that the applicant for a franchise to use the right of way of county roads for the construction and maintenance of electric power lines is not a public service corporation entitled to exercise the right of eminent domain, does not of itself preclude the board of county commissioners from granting such franchise. In fact, Rem. Rev. Stat., Vol. 7A, § 6450-38, authorizes the board of county commissioners to grant such franchises to "persons

or private or municipal corporations" regardless of the right, or lack of right, of such persons to resort to proceedings in eminent domain.

We now pass to the remaining contention made by appellants in their assignments of error, namely, that the board of county commissioners failed to exercise the discretion with which it was vested, and which it was required to exercise, in granting the franchise to Cooperative.

The respondent board, in answering the petition for writ of mandamus, denied that it failed to exercise its discretion, and averred "that the said franchise was granted in good faith and in the public interest." However, in answering the allegation that it had acted arbitrarily in refusing to adjourn the franchise hearing until after the election to determine whether College Place should be incorporated, the board pleaded that

" . . . said hearing was not adjourned by the Board of Commissioners, following full and fair hearing for the reason that these commissioners considered that the granting of the franchise in question was in the public interest and that while the Pacific Power & Light Company is likewise a franchise holder, that its rights in the highways are not exclusive, that the matters was thoroughly argued, that this board of commissioners voted upon the question and they concluded, after the hearing, that it should not deny the application of the cooperative not-with-standing the protest of the Pacific Power and Light Company, *because to do otherwise would make the existing franchise on the county roads in the community exclusive, and that in the interests of fair play* Walla Walla Cooperative has a *right* to a franchise on the county roads." (Italics ours.)

Two events at the trial likewise indicate that the board of county commissioners believed it could not allow the appellant power company to retain and continue noncompetitive service, for the reason that the company did not have an exclusive franchise. At one point in the trial, Mr. Charles Baker, president of Cooperative, was asked whether a community was better served by one line of wires down a street or by a duplication of facilities. An objection was interposed, and, in support thereof, the deputy prosecuting

attorney who prepared the answer from which we have quoted then remarked:

"May we suggest to the Court the county commissioners are prohibited from granting only one franchise. The commissioners are prohibited in granting any exclusive franchises and counsel's inquiry here is against the statutes of the State of Washington."

The other event, arising upon the only direct evidence of the attitude of the board toward its duty under Rem. Rev. Stat., Vol. 7A, § 6450-38, was the testimony of respondent Reser, one of the commissioners. On very brief examination by his own counsel, Mr. Reser testified:

"Q. And were you present at the meeting of the county commissioners when the application for the franchise came on for hearing on behalf of the Walla Walla Electric Cooperative last December? A. Yes, I was present. Q. What considerations, in general, lead you to approve the franchise of the Walla Walla Electric Cooperative? A. Well, just the fact they were a corporation designed to deliver electricity to their customers. My understanding is the county can't give an exclusive right to any company, and they have a right to the use of the public highway for the construction of poles."

On cross-examination, he further testified:

"Q. Mr. Reser, as I understand your answer, the county commissioners took the view that because there was a provision in the law that no one was entitled to an exclusive franchise an applicant for a franchise was entitled to receive one because otherwise the holder would receive an exclusive franchise? A. No. It seemed the people had sufficient use for it that we were warranted in granting their using the public highway. Q. But on your direct examination you stated that the county commissioners couldn't grant an exclusive franchise and the Walla Walla Electric Cooperative had a right to one. A. That might be one. Anyone having a legal reason for asking for a franchise."

It was stipulated at the trial that both of the other commissioners, then in court, would testify to the same effect.

It is the contention of appellants that the commissioners acted from a misconception of their duty under the statute,

which was in truth to inquire only what was "for the public interest." Therefore, they say, if the commissioners assumed that it was illegal for Pacific Power & Light Company to retain the only power franchise in the area, or that Cooperative had a "right" to a franchise, they did not arrive at an impartial determination of the public interest.

The respondent board asserts in its brief that the only issue is whether it acted fraudulently or in bad faith in granting the franchise. The trial court ruled that there was nothing in the evidence to show that the action of the commissioners was arbitrary and capricious.

After careful review of all the evidence in the case, we are constrained to hold that the trial court erred in its ruling. We give our specific reasons for this conclusion, as follows:

First: The excerpts which we have quoted from the record persuade us that the commissioners proceeded upon the understanding and theory that the appellant power company, having a nonexclusive franchise, should not be left to occupy the College Place area without competition, in the face of an application by Cooperative for a franchise, lest, otherwise, the power company's franchise would in effect be exclusive, contrary to the provisions of both the constitution and the statute prohibiting the granting of exclusive franchises. This attitude was plainly erroneous. That identical contention was presented to this court by an application for a second telephone franchise in the city of Spokane, and was forcefully rejected in *State ex rel. Spokane & B. C. Tel. & Tel. Co. v. Spokane, supra.* This court has at least once expressed the opinion that the policy of our law is opposed to the idea that the public will be better served by two similar utilities in the same area, when one will amply suffice. *Day v. Tacoma R. & Power Co.,* 80 Wash. 161, 141 Pac. 347, L. R. A. 1915B, 547. Under the law of this state the respondent Cooperative has no *right* to a franchise, unless the respondent board determines that its operation will benefit the public. Rem. Rev. Stat., Vol. 7A, § 6450-38.

Second: There is evidence in the case tending to show that the board acted precipitantly in granting the franchise. At the time of the hearing, the applicant Cooperative was little more than a paper organization. It had no capital, no assets, and no employees. It had twenty-five members, only two of whom were apparently potential consumers if the franchise were granted. Its basis for the power rates which it proposed was a calculation made by employees of Bonneville Power Administration some two years before the hearing. It was shown at the trial that certain necessary cost factors, such as price increases and the apparent necessity for aerial cable, and possibly some underground installations, were doubtless omitted from that estimate. There was no concrete plan for facilities to be erected under the franchise, from which an accurate notion of required capital could be deduced, nor was there any indication in the evidence given at the trial as to what consumption of power Cooperative could expect. We think these were matters which vitally affected the public interest, and that, if the board failed to inquire into them, there was at least some circumstantial evidence that it failed to determine whether the public interest would in fact be subserved by the grant of this franchise.

Mr. Walter Bunch, mayor of College Place, testified at the trial of this case that, at the hearing upon the application for the franchise, held on December 17, 1945, he appeared with one or two other residents of College Place and requested a postponement of the hearing until after an election on December 24th to determine whether that community should be incorporated. The reason for the request was that proposed pole lines would occupy streets in College Place, and they thought that the community, were it incorporated, should have a right to pass upon the matter. Despite this request, the board announced at the end of the hearing on December 17th that the franchise was granted. The written order was signed after College Place was incorporated, but was predated December 17th to evade the force of that election. We think this matter was one in which the residents of College Place had

a special interest. Upon their incorporation, they acquired the right of self-government, and with it the right to pass upon the matter of electric power lines in their streets. Rem. Supp. 1945, § 9175 [P.P.C. § 383-29] (12).

Third: The judicial function is not confined in this case to determining whether there was fraud or bad faith.

The power to grant franchises for use of the highways is derived from the legislature. *State ex rel. Spring Water Co. v. Monroe,* 40 Wash. 545, 82 Pac. 888; *Dolan v. Puget Sound T. L. & P. Co.,* 72 Wash. 343, 130 Pac. 353.

In exercising that power, the board of county commissioners acts as an administrative agency of the state government. See *State ex rel. Spokane & B. C. Tel. & Tel. Co. v. Spokane, supra;* 4 McQuillin, Municipal Corporations (Rev. 2d ed.) 861, § 1739; 23 Am. Jur. 722, Franchises, § 11.

As such administrative agency, the board must conform to the requirements of the statute delegating the power. See *Flint v. Horsley,* 25 Wash. 648, 66 Pac. 59 (establishment of road); *State ex rel. Klaas v. County Commissioners,* 140 Wash. 43, 248 Pac. 76 (bridge franchise).

If it is alleged in a proper action that the board has failed so to act, the court will review the order of the board regardless of the good faith of the commissioners. Hence it was that this court, in *Flint v. Horsley, supra,* assumed the authority to void an order of county commissioners establishing a road other than that petitioned for, although there was no suggestion of fraud or bad faith. Upon the same principle, the court may inquire whether the board in fact exercised the discretion with which it was vested by statute.

"The general rule, of course, is that the discretionary power of the board of county commissioners is not subject to review by the court. But this is not a universal rule. If the action of the board of county commissioners is arbitrary or capricious, or if its action is prompted by wrong motives, there is not only an abuse of discretion, but, in contemplation of law, there has been no exercise of the discretionary power. . . . If a tribunal such as the board of county commissioners acts arbitrarily, or refuses to

exercise its discretion, the law will by mandamus require it to exercise its discretionary power." *State ex rel. Yeargin v. Maschke,* 90 Wash. 249, 155 Pac. 1064.

Beyond this, of course, the courts may not, and will not, intrude, for it is not their duty to weigh and consider the wisdom or lack of wisdom displayed by the county commissioners, provided they have lawfully exercised their discretion in the matter.

 With the foregoing rules in mind, we direct our attention to the narrow question: Did the respondent board exercise its discretion in determining whether the requested franchise was for the public interest?

We do not question the good faith of the board, nor do we presume to pass upon the wisdom of its determination. We do, however, assert our opinion, from a fair consideration of the evidence, that the board acted from a misunderstanding of the law, also that it acted precipitantly, and to that extent arbitrarily, respecting a matter which affected substantial interests of numerous persons, including the public utility then serving the county. The application was not urgent and deserved mature deliberation. In these circumstances, there was in truth no determination that the requested franchise was for the public interest, as required by statute.

For this reason, the judgment of the trial court must be reversed, with direction to that court to remand the matter to the board of county commissioners for a new hearing by that body on the question whether the franchise should be granted, in the event that application therefor is renewed.

Assuming that such new application will be made, we deem it proper, for the guidance or information of interested parties, to answer other assignments of error affecting the merits of the case.

 It is urged by the appellants that respondent Cooperative has no right to engage in the business for which the franchise was granted. It is said that Cooperative is not a bona fide nonprofit corporation, and that the laws

relating to nonprofit corporations do not warrant the intended activities of respondent.

The conclusive answer to that contention is that appellants have no standing to raise that question. The appropriate proceeding in such instance is *quo warranto.* Rem. Rev. Stat., § 1034 [P.P.C. § 90-1]; *State ex rel. Lundin v. Merchants Protective Corp.,* 105 Wash. 12, 177 Pac. 694; *Sheffield Co. v. R. Hoe & Co.,* 173 Wash. 489, 23 P. (2d) 876; 5 Fletcher, Cyclopedia of Private Corporations (Perm. ed.) 788, 801, 802, §§ 2324, 2331.

 ·Appellants further contend that the issuance of a franchise to a private corporation, immune from any public service obligation, and from regulation by the state department of public utilities, and from certain taxes, to parallel the lines of and enter into direct competition with a public service corporation subject to those burdens, is a denial of the equal protection of the laws as guaranteed by the fourteenth amendment, and a granting of special privileges and immunities, contrary to the inhibition of Art. I, § 12, of our state constitution.

So far as the record shows, this argument was not presented to the trial court, nor did that court pass upon it. We therefore will not entertain that question in this appellate proceeding. See 8 Bancroft, Code Practice and Remedies, 8477, § 6432. We have applied this rule in declining to consider constitutional questions. *North River Boom Co. v. Smith,* 15 Wash. 138, 45 Pac. 750; *Unemployment Compensation Department v. Hunt,* 17 Wn. (2d) 228, 135 P. (2d) 89.

We, of course, do not mean to imply that in no instance can constitutional rights be asserted for the first time upon appeal to this court, for we recognize that there may be occasions when personal liberties are involved which we could not well decline to consider. As to the case before us, however, it is enough to say that whether the constitutional rights of the appellant power company have been infringed is, at most, fairly debatable (see *Inland Empire Rural Electrification v. Department of Public Service, supra),* and that there is no reason why this question, if it

is seriously urged, should not have been presented to the trial court for its determination.

██ Next, appellants assert that the application for franchise was not made in good faith. They allege a conspiracy, whereby Interstate Electric, Inc., seeks to purchase the properties of the appellant power company from its parent holding company, and the respondent Cooperative is making threats of competition with the power company to coerce the holding company into acquiescence. We must acknowledged, as did the trial court, that there is evidence to support the assertion.

However, this action is not designed to test the charge of conspiracy on the part of the parties charged therewith. It is essentially a proceeding to inquire into the actions of the board of county commissioners. The motives of the applicant were undoubtedly a proper matter for the consideration of the board, but we cannot say, in that respect, that the board abused its discretion by denying paramount importance to evidence of ulterior motives, when the object of the board's inquiry was the public interest.

There are adequate safeguards against the perversion of the requested franchise. The order of the board conditions the franchise upon the holder's proceeding upon the construction work with "due diligence and in good faith," and within one year. If Cooperative should prove guilty of bad faith in the operation of its system, the public finds protection in Rem. Rev. Stat., § 1034, authorizing *quo warranto* proceedings, and in other laws of the state. See 5 Fletcher, Cyclopedia of Private Corporations, 804, § 2332.

██ Closely related in nature to the argument just considered are two other assertions made by the appellants. One is that the installation of additional power lines on the county roads would create unnecessary hazards to linemen and the general public. The other is that the public is already served by existing facilities of the appellant power company and the Columbia County Rural Electrification Association, and that additional power lines are unnecessary. For both of these reasons, appellants urge, the requested franchise cannot be in the public interest.

Our answer again must be that these are matters for the consideration of the board of county commissioners, and touch upon the wisdom of granting the franchise, not upon its legality.

As to safety, we concur with the trial court that Cooperative is bound to abide by adequate safety regulations, and if it does so there will be no such undue hazard as would justify a court in nullifying the board's order. As to duplication of facilities, it is sufficient to say that the board is entitled to decide whether presently existing service is adequate, and whether duplicate facilities would overtax the highways. With the exercise of that discretion, wisely vested in local officers, the courts have no authority to interfere.

Lastly, it is asserted by appellants that the board of county commissioners must conduct its franchise hearing substantially in accordance with the rules set forth in *Morgan v. United States,* 298 U. S. 468, 80 L. Ed. 1288, 56 S. Ct. 906. To avoid future litigation in this case upon that issue, we deem it desirable, although not necessary to the disposition of this appeal, to answer that contention.

We find no authority for appellants' argument. Safeguards to the individual appropriate to a rate determination by the secretary of agriculture are different in kind and degree from those required by our constitution to be applied to a determination by county commissioners as to whether local roads shall be occupied by additional poles and wires.

We think it correct to say that, when the statute prescribes no mode of inquiry, an administrative agency is impliedly authorized to use any procedure that is reasonable in attaining the end in view. If a hearing is required, it must be adequate and fair. But it does not follow from this, as apparently contended by appellants, that oaths must be administered to witnesses, or that the board is bound to consider only matters presented to it at the hearing. *Olympia Water Works v. Gelbach,* 16 Wash. 482, 48 Pac. 251; *Norwegian Nitrogen Products Co. v. United States,* 288 U. S. :294. 77 L. Ed. 796, 53 S. Ct. 350; *United States ex rel. Roop*

*v. Douglass,* 8 Mackey (19 D. C.) 99; Tooke, Legal Standards of Municipal Government, 199 The Annals of the American Academy of Political and Social Sciences 1; Note, Requisites of an Administrative Hearing, 80 U. of Pa. Law Rev. 878.

Our conclusion upon the whole case is that the board of county commissioners did not exercise its discretion in granting the franchise, but acted arbitrarily; and that therefore the judgment of the trial court must be reversed, and the cause remanded to it, to the end that the court may issue a mandate directing the respondent board of county commissioners to rescind its order of December 17, 1945, granting the franchise to respondent Walla Walla Electric Cooperative, Inc. This mandate shall not prejudice the right of the respondent Cooperative to make application for a new franchise, if it so desires, for the purpose of occupying public highways with its poles and wires.

It is so ordered.

ROBINSON, JEFFERS, and HILL, JJ., concur.

MALLERY, C. J., dissents.