[No. 479-2.    Division Two.    May 8, 1972.]

THE STATE OF WASHINGTON, *on the Relation of Jack C. Hood et al., Appellant,* v. THE WASHINGTON STATE PERSONNEL BOARD *et al., Respondents.*

*Slade Gorton, Attorney General, Arthur F. Mickey* and *Paul D. Solomon, Assistants,* for appellant.

*Slade Gorton, Attorney General,* and *Kenneth W. Elfbrandt, Assistant,* for respondent State Personnel Board.

*Herbert H. Fuller,* for respondent Thompson.

PETRIE, C.J.—On April 29, 1970 the Washington State Liquor Control Board gave written notice of dismissal to one of its employees, Jack A. Thompson. Mr. Thompson promptly appealed the action of dismissal to the State Personnel Board. After a hearing on the merits, the Personnel Board ordered Mr. Thompson reinstated as an employee with restoration of all employee rights. In due time the Liquor Control Board sought review of the Personnel Board's action in the Superior Court for Thurston County by filing a petition for writ of certiorari. The writ issued and the Personnel Board was directed to certify its record to the court.

The Personnel Board moved to dismiss the writ on the grounds, in part, that the court lacked jurisdiction over the subject matter and that the Washington State Liquor Control Board lacked standing to obtain review of orders issued by the Washington State Personnel Board. The court denied the motion, heard the matter on its merits (after Mr. Thompson had by agreed order been granted permission to intervene) but, nevertheless, issued an order affirming the reinstatement order of the Personnel Board. This appeal, by the Liquor Control Board, followed.

Before examining the merits of the appeal, we deem it necessary to reexamine the jurisdictional question presented by the Personnel Board's motion to dismiss the writ in superior court. We note, preliminarily, that the Liquor Control Board did not assert any right of *appeal* to the superior court, because the statutory right of appeal from orders of the State Personnel Board has been limited by RCW 41.06.200 to employees only. The jurisdictional basis for issuance of a writ of review by certiorari is found in RCW 7.16.040, which provides:

> A writ of review shall be granted by any court, except a police or justice court, when an inferior tribunal, board

or officer, *exercising judicial functions,* has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

(Italics ours.)

■ Certiorari orthodoxy demands that the writ lies only to review judicial functions. We focus, therefore, on whether or not the functions exercised by the State Personnel Board are "judicial functions." The Washington State Personnel Board was created as an integral portion of Initiative Measure 207 adopted by vote of the people on November 8, 1960. In addition to having been granted rather broad rule-making authority, the Personnel Board has the duty to entertain appeals from employees who have been dismissed for cause, to conduct hearings thereon, and to issue findings of fact, conclusions of law, and orders after review of the evidence presented. RCW 41.06.170, .180 and .190. The board's findings of fact on disputed issues carry into the superior court a prima facie presumption of correctness. *Gogerty v. Department of Institutions,* 71 Wn.2d 1, 426 P.2d 476 (1967). As to form and effect, therefore, those functions of the Personnel Board related to hearings conducted pursuant to appeals by dismissed employees assume an unmistakably, judicial mantle. Were we, literally, to apply the test: "[T]hat which *resembles* what courts customarily do is judicial, and that which has no such resemblance is non-judicial." (Footnote omitted. Italics ours.) 3 K. Davis, Administrative Law § 24.02, at 395 (1958), we would be forced to conclude that these functions of the Personnel Board are judicial functions.

■ We are inclined to the belief, however, that a more significant test of the true nature of an administrative agency's function looks more toward substance than to form. Agencies exercising essentially administrative or legislative functions (as opposed to judicial functions) may,

among other things, act as fact-finding bodies to ascertain whether a given legislative formula has been met. *In re Harmon,* 52 Wn.2d 118, 323 P.2d 653 (1958). In *Okanogan County School Dist. 400 v. Andrews,* 58 Wn.2d 371, 375, 363 P.2d 129 (1961), the court quoted with approval a test enunciated in *Belk's Dep't Store v. Guilford County,* 222 N.C. 441, 23 S.E.2d 897 (1943) as follows:

" . . . The action could only be judicial in any proper sense if it went to the determination of some right the protection of which, under our system of jurisprudence, is the peculiar office of the courts. . . ."

Sometimes the test of distinction between judicial and non-judicial functions is declared to be: "whether the function . . . is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body." *Floyd v. Department of Labor & Indus.,* 44 Wn.2d 560, 571, 269 P.2d 563 (1954).

The deliberately avowed purpose of Initiative 207, which created the State Personnel Board, was to establish for the State of Washington and its employees

[A] system of personnel administration based on merit principles and scientific methods governing the appointment, promotion, transfer, layoff, recruitment, retention, classification and pay plan, removal, discipline and welfare of its civil employees, . . .

RCW 41.06.010.

In other words, prior to creation of the State Personnel Board, there did not exist any generally applicable personnel administration based on merit principles and scientific methods. Matters of appointment, promotion, removal and discipline of state employees, in general, were prerogatives left exclusively to management's unbridled discretion. There were no employment rights of state employees, the protection of which, under our system of jurisprudence, was the peculiar office of the courts. There were, therefore, no functions which the courts were or could have been accustomed to perform. The act which created the agency

created the rights which the agency was designed to protect.

■ We conclude that the function of the State Personnel Board, in hearing and determining appeals from employees who have been dismissed for cause by their employing agency, is a nonjudicial function.[1] Accordingly, the superior court lacked jurisdiction to issue the statutory writ.

■ Although we have concluded that the statutory writ should not have issued, we deem it necessary to explore the substance rather than the form, of the application for relief. Nonjudicial administrative decisions which violate some fundamental right of the party challenging them can be reviewed by the court to a limited extent, even in the absence of any statutory grant of review. *State ex rel. Dupont-Fort Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963); *Citizens Against Mandatory Bussing v. Palmason,* 80 Wn.2d 445, 495 P.2d 657 (1972). Indeed, a limited review by the court cannot be defeated by a specific statutory denial of review. *State ex rel. Shannon v. Sponburgh,* 66 Wn.2d 135, 401 P.2d 635 (1965).

In the instant case, the statutory scheme of court review is limited by RCW 41.06.190 and .200, respectively, in part, as follows:

> Within thirty days after the conclusion of the hearing the board shall make and fully record in its permanent records findings of fact, conclusions of law when the construction of a rule, regulation or statute is in question, reasons for the action taken and its order based thereon,

---

[1]Obviously, in exercising its rule-making authority, the board is performing a legislative function. We note that although the board has been directed to adopt and promulgate rules "regarding the basis for, . . . the dismissal, suspension, or demotion of an employee, . . ." (RCW 41.06.150) no general rules therefor exist in the Washington Administrative Code. It is conceivable that the board, itself, perceives its role in hearing and deciding appeals filed by aggrieved employees as performance of its responsibilities to promulgate rules regulating dismissals, suspension or demotions on a case-by-case basis.

which shall be *final* subject to action by the court on appeal as hereinafter provided, . . .

(1) Within thirty days after the recording of the order and the mailing thereof, the *employee may appeal* to the superior court of Thurston county, . . .

(Italics ours.)

Notwithstanding the limitations imposed by statute and by the form of the application for relief sought by the Liquor Control Board, we have examined the record for allegations of violation of a fundamental right, either substantive or procedural. We find one assignment of error which, arguably, could be considered an assertion of violation of a fundamental procedural right. The Liquor Control Board contends that the Personnel Board applied a "conclusive evidence" test rather than a "preponderance of the evidence" test to resolve a key factual issue.

■ When hearings are required by administrative agencies, they must be adequate and fair. *State ex rel. York v. Board of County Comm'rs*, 28 Wn.2d 891, 184 P.2d 577, 172 A.L.R. 1001 (1947). *See also Citizens Against Mandatory Bussing v. Palmason, supra*. The argument of the Liquor Control Board appears to be that if a burden of proof is imposed upon it greater than required by statute, or even by the Personnel Board's own rules, then any hearing conducted under such erroneously constituted restrictions is neither adequate nor fair.

This issue arose in the following factual setting. Mr. Thompson was originally employed by the Liquor Control Board as a warehouseman 1 on June 2, 1967, under an emergency appointment, without having filled out an application for employment on a Department of Personnel form. He was continuously employed by the Liquor Control Board from June 2, 1967 through May 15, 1970, the effective date of his dismissal. On July 29, 1968 he signed a Department of Personnel application for employment form for the position of warehouseman 2. On January 1, 1969, Mr. Thompson's status changed from "emergency" to probationary and he subsequently achieved permanent status

on July 1, 1969. He was promoted to warehouseman 2 on August 1, 1969. Investigation prior to his dismissal revealed that he had been convicted of second-degree assault on June 29, 1964 and had been confined in the Washington State Reformatory. The essence of the notice of dismissal served on him was "your giving of false information of a material fact . . ." on the application for employment dated July 29, 1968, by answering "No" to the inquiry as to whether or not he had ever been arrested or placed in jail or prison.

The offending entry, to which the Liquor Control Board has assigned error, is the Personnel Board's conclusion No. 6, as follows:

> In making and extending this emergency appointment, the appointing authority elected to circumvent normal selection and screening procedures. The evidence indicates that no attempt was made to check the applicant's background for arrests and convictions, nor was the applicant questioned in this regard. When, over one year later, they belatedly converted the employee's appointment from "emergency" status to a regular appointment, for the first time an official application form was filled out. However, *no conclusive evidence was submitted that the employee knowingly falsified* [2] *such application* and obviously the appointing authority was, at that time, unconcerned with his answers, and did not change its position in reliance thereon.

(Italics ours.)

[2] We note that the Personnel Board properly distinguished between knowingly falsifying the application and "failure to disclose" his conviction. By another "conclusion," the board determined that it was not necessary "at this time, to pass upon the question of whether failure to disclose a conviction constitutes legal or just cause for suspension or dismissal . . ." apparently on the theory that

> It would be unreasonable and totally unfair to the employee to allow the appointing authority, at this late date, to discharge the employee on the basis of readily available information which the appointing authority made no attempt to seek out at the time of the appointment in June, 1967 nor during the ensuing eighteen or more months of the "emergency" appointment.

The board might also have concluded that it was unnecessary to pass upon the "failure to disclose" because that was not a ground alleged in the notice of dismissal.

The use of the expression "no conclusive evidence" is most certainly an unfortunate appellation. Its use does expose the Personnel Board to the charge that the board proceeded in a manner contrary to law; even arbitrarily in the sense that it ignored or refused to follow its own rules. WAC 356-28-470 authorizes an employee to appeal to superior court on the grounds that the board's order is contrary to a *preponderance* of the evidence. In 41 Wash. L. Rev. 109 (1966) the Honorable Lloyd L. Wiehl, Judge of the Superior Court for Yakima County critically reviews the various combinations of adjectives which have been utilized to describe the burden of persuasion under varying circumstances. Certainly "conclusive" ordinarily imparts use of a high probability as to the existence of a fact.

Any conclusion of law entered by a judge of the superior court which indicated that "no conclusive evidence was submitted" to establish a material fact would, in and of itself, be an indication that the court applied a test of persuasion greater than a "preponderance" test. It is a matter of historical record, also, that during its relatively brief history the State Personnel Board, through several of its members, has benefited immeasurably from the time and talents of distinguished members of the bar of this state. However, a search of the Washington Reports fails to indicate that the two members of the board, who heard this appeal and who signed the board's findings and conclusions, were ever admitted to the bar of this state. Undoubtedly these two board members were selected for that position, in part, because of a vast knowledge and experience in the field of personnel responsibilities, but not because of their legal scholarship. To a lay board the expression "conclusive evidence" can, and frequently does, have a variety of nuances. We are not impressed that the board meant anything more than that there was insufficient evidence in the record to permit them to conclude that Mr. Thompson had knowingly falsified the application of July 29, 1968. A search of the record for evidence of this issue bolsters our impression. In any event, the record in its totality unmistakably

indicates that the board did not proceed in a manner contrary to law, much less in an arbitrary or capricious manner.

We reach the same conclusion as the trial court, albeit by a slightly different path. Accordingly, the order appealed from, insofar as it affirms the order of the State Personnel Board and assesses costs against the State Liquor Control Board, is affirmed.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied July 10, 1972.

Review granted by Supreme Court September 20, 1972.